No. 90-501

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

JACK C. STIMAC, MICHAEL A. TEFFT,
EDWARD C. PETERS, JOSEPH E. GASPAR,
NANCI ELLEN GREEN, RANDY J. ARCHEY,
JOSEPH M. McKAMEY, GEORGE L. DOMME,
MICHAEL D. CROSS, and MICHAEL E. HEISLER,

Plaintiffs and Respondents.

v.

THE STATE OF MONTANA,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

W. D. Hutchison, Assistant Attorney General,
Helena, Montana

For Respondent:

Lawrence D. Anderson, Great Falls, Montana

Submitted on Briefs: February 21, 1991

Decided: June 3, 1991

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Defendant, the State of Montana, appeals from an order of the District Court of the Eighth Judicial District, Cascade County, awarding an attorney's fee in accordance with the one-third contingent-fee agreement entered into between the plaintiffs and their attorney. We affirm.

The sole issue raised on appeal is whether the District Court abused its discretion in awarding the full amount of the plaintiffs' contingent-fee agreement as a reasonable attorney's fee under § 39-3-214(1), MCA.

The plaintiffs are fire fighters employed by the State of Montana, Department of Military Affairs, and stationed at the Montana Air National Guard facilities located at the Great Falls International Airport. The building in which they are stationed is owned by the federal government. The equipment used by the plaintiffs in performing their duties is also owned by the federal government, but administered by the State. They are paid in part by the Great Falls International Airport Authority and in part by the federal government. The money providing their salaries is administered by the State.

For years, the plaintiffs were required to work more than eight hours a day and 40 hours a week without receiving overtime compensation. The plaintiffs made a number of administrative inquiries concerning overtime pay, but because of the confusing and

2

ambiguous relationship between the state, local, and federal bodies that employed and paid them, their inquiries were unsuccessful.

Finally, the plaintiffs decided to hire an attorney. They consulted with two Great Falls practitioners who refused to take their case. They then contacted attorney Lawrence Anderson, who agreed to represent them.

The plaintiffs met with their attorney prior to filing the case. At the meeting, the attorney warned the plaintiffs that their claims were speculative. He advised them that he would take the case for an hourly rate of $80 or for a contingent fee. Because none of the plaintiffs possessed sufficient discretionary income to pay the hourly rate, they agreed to the contingent-fee arrangement and signed contracts calling for payment of one-third of any settlement or judgment secured in their favor by the attorney.

Six plaintiffs filed suit in December 1984. They were later joined by four others. As originally filed, the complaint alleged that the State violated § 39-3-405, MCA, by refusing to pay plaintiffs overtime compensation for work weeks in excess of 40 hours per week, and § 39-4-107, MCA, by requiring plaintiffs to work in excess of eight hours a day. Plaintiffs sought back pay, penalties, and attorney's fees. In 1988, the plaintiffs filed an amended complaint, adding an additional claim under the Fair Labor Standards Act.

The parties pursued extensive discovery. The plaintiffs filed motions for summary judgment in June 1986 and again in August 1988. The State also moved for summary judgment in August 1988. The District Court denied the 1986 motion, but did not rule on the 1988 motions.

The action was set for trial three times. It was continued twice, once at the request of the State, and once due to a conflict in the court's calendar. The second continuance came only a few days before trial, after the plaintiffs had largely completed preparation for trial.

Shortly thereafter, the parties settled the case. They filed a settlement proposal stipulating to entry of judgment three and one-half months later. Pursuant to the settlement, the State agreed to pay varying amounts to the individual plaintiffs, based on length of service and number of overtime hours worked. Altogether, the plaintiffs received a total of $367,559 in overtime and interest. The State also agreed to contribute retirement benefits according to the amount of overtime compensation due each plaintiff, and to deduct social security taxes from the overtime payments. The plaintiffs agreed to waive their claims for penalties under § 39-3-206, MCA. The parties agreed that the plaintiffs were entitled to reasonable costs and attorney's fees as provided in § 39-3-214, MCA. However, they disputed the amount of the fees and agreed to litigate the issue.

4

The District Court held hearings on the attorney's fee issue on March 28 and April 25, 1989. On June 19, 1990, the court issued findings of facts, conclusions of law, and order, finding that the contingent-fee agreement was reasonable and awarding fees equalling one-third of the overtime and interest award, one-third of the retirement benefits, and one-third of the social security contributions made by the State. The State appeals from this order.

The State acknowledges that, under § 39-3-214, MCA, and the terms of the settlement, the plaintiffs are entitled to an attorney's fee. It argues, however, that the District Court abused its discretion in awarding fees equalling the full amount of the one-third contingent-fee agreement. It contends that such an award was unreasonably large.

A party who prevails in a wage-claim action shall be entitled to a reasonable attorney's fee. Section 39-3-214(1), MCA, provides as follows:

> Whenever it is necessary for the employee to enter or maintain a suit at law for the recovery or collection of wages due as provided for by this part, a resulting judgment must include a reasonable attorney's fee in favor of the successful party, to be taxed as part of the costs in the case.

The purpose of this statute is "to provide an employee who wins a judgment for wages due against an employer a vehicle by which to receive attorneys fees and thus be made whole." Glaspey v. Workman, 230 Mont. 307, 309, 749 P.2d 1083, 1084 (1988)

5

(Glaspey I). By passing the attorney's fee obligation to the employer, the employee's net award is preserved intact and is not eroded by the cost of litigation.

In Glaspey v. Workman, 234 Mont. 374, 378, 763 P.2d 666, 668 (1988) (Glaspey II), we held that the district court must consider seven factors in determining whether an award of attorney's fees under § 39-3-214(1), MCA, is reasonable. The factors include:

> (1) [T]he amount and character of the services rendered; (2) the labor, time, and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the character and standing in their profession of the attorneys; and (7) the result secured by the services of the attorneys.

Glaspey II, 234 Mont. at 378, 763 P.2d at 668.

Glaspey II involved a wage-claim action in which the attorney charged an hourly rate. The present case, on the other hand, concerns a contingent-fee arrangement. The plaintiffs here argue that, when a case concerns a contingent-fee contract, the court should consider the factors enumerated in Wight v. Hughes Livestock Co., 204 Mont. 98, 114, 664 P.2d 303, 312 (1983), in addition to those set out in Glaspey II.

In Wight, 204 Mont. at 114, 664 P.2d at 312, we held that, in workers' compensation cases, the district court should examine several factors in assessing the reasonableness of a contingent-fee arrangement. These include:

> (1) The anticipated time and labor required to perform the legal service properly.

6

(2) The novelty and difficulty of legal issues involved in the matter.
(3) The fees customarily charged for similar legal services.
(4) The possible total recovery if successful.
(5) The time limitations imposed by the client or circumstances of the case.
(6) The nature and length of the attorney-client relationship.
(7) The experience, skill and reputation of the attorney.
(8) The ability of the client to pay for the legal services rendered.
(9) The risk of no recovery.

Wight, 204 Mont. at 114, 664 P.2d at 312 (quoting Clark v. Sage, 629 P.2d 657, 661 (Idaho 1981)).

We also noted that another factor "is the market value of the lawyer's services at the time and place involved." Wight, 204 Mont. at 114, 664 P.2d at 312.

The Glaspey II and Wight factors are quite similar. Wight simply adds elements pertaining to the market value of the attorney's services--the amount of fees customarily charged, the ability of the client to pay, and the risk of no recovery-- elements that are pertinent when considering the reasonableness of a contingent-fee agreement. As we have observed:

Most of the [workers' compensation] disability claimants have no other resources for the payment of fees. The contingency of compensation, whether it stems from an employment contract or results from the claimants [sic] indigency, is highly relevant in the appraisal of the reasonableness of any claim. The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services. Charges on the basis of a minimal hourly rate are surely inappropriate

7

for a lawyer who has performed creditably when payment of any fee is so uncertain.

Wight, 204 Mont. at 110-11, 664 P.2d at 310 (quoting McKittrick v. Gardner, 378 F.2d 872, 875 (4th Cir. 1967)).

We hold that the District Court should consider the following factors when assessing whether to award the full amount of the contingent-fee agreement as a reasonable attorney's fee under § 39-3-214(1), MCA:

1. The novelty and difficulty of the legal and factual issues involved;

2. The time and labor required to perform the legal service properly;

3. The character and importance of the litigation;

4. The result secured by the attorney;

5. The experience, skill, and reputation of the attorney;

6. The fees customarily charged for similar legal services at the time and place where the services were rendered;

7. The ability of the client to pay for the legal services rendered; and

8. The risk of no recovery.

Applying these factors to the present case, we conclude that the District Court did not abuse its discretion in awarding an attorney's fee equalling the full amount of the contingent-fee agreement. Under the circumstances, the fee was reasonable.

1. _The novelty and difficulty of the legal and factual issues_. This was not an ordinary wage-claim action. Rather, the case presented extremely novel and complex legal and factual issues. Because of the ambiguous relationship between the differing state, local, and federal agencies who employed them, the plaintiffs failed to fall neatly within any statutory or regulatory scheme. The State vigorously asserted that the plaintiffs were exempted from Montana's statutes governing wages and overtime. It also claimed that the meal and sleep exemptions applied. These defenses raised both legal and factual issues that required analysis of time records, pay records, standing orders of the State, and daily logs.

The complexities of the case were compounded by the fact that the attorney represented not one plaintiff, but ten. Each claim depended upon the length of service of each plaintiff as well as the number of overtime hours worked.

In addition, while the lawsuit was pending, the United States Supreme Court decided Garcia v. San Antonio Metropolitan Transit Auth., 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Garcia created additional complications because of the conflicts between the Fair Labor Standards Act and the Montana wage and overtime statutes.

2. _The time and labor required_. Because the case was so complex, the attorney was required to spend a great deal of time looking through documents and researching law. One of the

9

plaintiffs' expert witnesses, Doug Wold, who had experience in complex wage and hour litigation, testified that he had expended in excess of $42,000 in attorney's fees in a case involving three plaintiffs who sought overtime compensation covering a three and one-half year period. He testified that the present case was more complex by virtue of the greater number of plaintiffs and the longer period of time as well as the additional legal and factual issues involved.

Although the plaintiffs' attorney did not keep track of the number of hours expended on the case, he marshalled evidence demonstrating that the case was very time consuming. In addition to conducting extensive factual and legal research, the attorney vigorously prosecuted the action. He moved for summary judgment twice and defended against the State's motion for summary judgment once. He largely completed trial preparation, even though the case never went to trial. Once the parties agreed to settle the case, it took three and one-half months to reduce the settlement to a six-page stipulation for judgment.

3. <u>The character and importance of the litigation</u>. There can be no doubt that the case was important. Indeed, by enacting a statute providing for attorney's fees to the successful litigant "[t]he legislature has recognized the gravity of an employee's right to wages . . . ." <u>Glaspey II</u>, 234 Mont. at 378, 763 P.2d at 668-69. Moreover, the case benefited not only the individual plaintiffs but other similarly situated fire fighters as well. The

10

legislative appropriation funding the judgment provided benefits for fire fighters who did not participate in the lawsuit.

4. <u>The result secured</u>. In the face of factual complexities, lack of legal precedent, and active defense by the State, the attorney managed to successfully settle the case. The plaintiffs received overtime and interest awards ranging from $10,461 to $62,434, as well as retirement benefits. Under the circumstances, the attorney secured excellent results for the plaintiffs.

5. <u>The experience, skill, and reputation of the attorney</u>. Montana does not have a pool of lawyers available and experienced in handling this type of case. The plaintiffs' attorney is one of the few in the state who handle complex wage and hour litigation.

6. <u>The fees customarily charged</u>. A one-third rate is universally charged in contingent-fee cases. In this lawsuit, it was probably a conservative rate as the case posed post-collection risks of funding dependent upon a legislative appropriation and the governor's approval.

7. <u>The ability of the client to pay</u>. The plaintiffs did not have sufficient discretionary income to finance the case on an hourly fee basis. Furthermore, they were informed by the attorney that they were undertaking some amount of risk in pursuing their claims. The plaintiffs were both unable and unwilling to assume the economic risk of an hourly fee contract in the event of no recovery.

8. <u>The risk of no recovery</u>. As noted above, the case presented novel legal theories with no established precedent. Before the plaintiffs' present attorney took the case, it had been rejected by two others. Furthermore, the plaintiffs were faced with the additional risk of depending on an appropriation from the legislature for funding for their awards. The risks involved in the case justified the contingent-fee arrangement.

The District Court issued detailed findings of fact, which are fully supported by the record. The court did not abuse its discretion in granting the plaintiffs a reasonable attorney's fee of one-third of the amount of settlement in accordance with the contingent-fee arrangement.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices