No. 92-139

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

ROBERT VAN RIPER, JEAN VAN RIPER
and VAN'S TRACTOR, INC.,

     Plaintiffs and Respondents,

-v-

FORD NEW HOLLAND, INC., and
FORD MOTOR CREDIT COMPANY,

     Defendants and Appellants.

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Keith Strong (argued) and Creighton Magid, Dorsey &
          Whitney, Great Falls, Montana

     For Respondent:

          Turner C. Graybill (argued) and Gregory H. Warner,
          Graybill, Ostrem, Warner & Crotty, Great Falls,
          Montana

FILED

OCT 2 1 1993

Filed:
   *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted:  January 21, 1993

Decided:  October 21, 1993

_____
               Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Ford New Holland, Inc. (Ford New Holland), appeals from a judgment entered by the District Court for the Eighth Judicial District, Cascade County. The court assessed damages, costs, and attorney fees against Ford New Holland for violations of §§ 30-11-802 and -803, MCA, and breach of the covenant of good faith and fair dealing. Ford New Holland appeals. We affirm.

The issues are:

1. Did the District Court err by applying §§ 30-11-802 and -803, MCA, to the Versatile Agreement?

2. Did the District Court err in concluding that Ford New Holland violated §§ 30-11-802 and -803, MCA?

3. Did Ford New Holland breach the implied covenant of good faith and fair dealing?

4. Did the District Court err in awarding damages?

5. Did the District Court err in awarding attorney fees?

Robert and Jean Van Riper (the Van Ripers), owned and operated Van's Tractor, Inc. (Van's Tractor), in Havre, Montana. Van's Tractor sold new and used tractors and other farm equipment. Van's Tractor entered a dealership agreement with Versatile Farm Equipment (Versatile) on November 2, 1983.

In 1987, Versatile, then in bankruptcy, sold certain of its assets, including the Van's Tractor Versatile franchise, to Ford New Holland, a subsidiary of Ford Motor Company. Versatile sold other of its assets, including a Noble plow line, to Vicon Farm

2

Equipment, Inc., a corporation unrelated to Ford New Holland. Van's Tractor decided not to continue selling Noble products and returned its supply of Noble parts to Vicon.

Corporate mergers resulted in Ford New Holland then having two outlets in Havre, Van's Tractor and an existing "company store." The goal of Ford New Holland was to have one dealer in Havre. It sought a dealer who would buy out its interest in the company store. Van's Tractor was a prospective purchaser. However, Ford New Holland determined that Van's Tractor would not be its full-line dealer in Havre. Ford New Holland did not notify Van's Tractor of this decision.

In the fall of 1987, Ford New Holland designated Van's Tractor for attrition as a Versatile dealer. The designation meant Van's Tractor could not transfer its Ford New Holland dealership and had no future as a Ford New Holland dealer. Ford New Holland did not notify Van's Tractor of this designation.

From 1987 to 1988, the net worth of Van's Tractor declined. In the year ending April 1988, Van's Tractor sold only one piece of Versatile equipment. The Van Ripers attempted to sell Van's Tractor and received an offer in April of 1988, but Ford New Holland refused to approve transfer of the dealership. Ford New Holland then asked that Van's Tractor resign its dealership because it had attempted to sell the franchise. Van's Tractor refused.

In April 1988, Ford New Holland decided to terminate the Van's Tractor dealership based on the refusal by Van's Tractor to pay an

$11,000 disputed bill. The position of Van's Tractor as to this bill was that it would not pay the bill until it was credited for Noble parts it originally had obtained from Versatile and had returned to Vicon. The position of Ford New Holland was that although it had the right to collect the accounts of Versatile, it had no responsibility to fulfill the obligations of Versatile which had been assumed by Vicon.

Subsequently, Ford New Holland placed Van's Tractor on "stop ship" status and withdrew its credit line. On May 20, 1988, Ford New Holland drafted a letter demanding that Van's Tractor pay the bill within ten days or be terminated as a dealer. Termination proceedings began on May 27, 1988. Van's Tractor did not receive Ford New Holland's demand letter until June 6, 1988, but it paid the disputed amount within ten days of that date.

Despite payment, Ford New Holland did not remove Van's Tractor from "stop ship" status. As a result, Ford New Holland shipped a four-wheel drive tractor and a Versatile swather ordered by Van's Tractor to the competing dealer in Havre. Van's Tractor was unable to obtain any parts until August 23, 1988. Van's Tractor resigned its dealership in September of 1988, and then brought this lawsuit.

The case was tried to the court sitting without a jury. The court dismissed all individual claims of Robert and Jean Van Riper and all claims against Ford Motor Credit. The court found in favor of Van's Tractor on its claims against Ford New Holland and awarded

$443,000 in damages, attorney fees of $162,000, and $12,393 in costs. Ford New Holland appeals.

I

Did the District Court err by applying §§ 30-11-802 and -803, MCA, to the Versatile Agreement?

The District Court found that Ford New Holland violated both § 30-11-802, MCA, and § 30-11-803, MCA. Ford New Holland contends that application of these statutes in this case is a prohibited retroactive application because the statutes were enacted in 1985, two years after the contract was entered between Versatile and Van's Tractor.

The record demonstrates that in the spring of 1987, Versatile was insolvent and in receivership. It had ceased manufacturing, was negotiating liquidation of its assets, and was in bankruptcy. Ford New Holland assumed and undertook the duties and responsibilities of Versatile with respect to certain dealerships, including Van's Tractor. Versatile had no intention of being responsible any longer under its dealership agreements; it was out of business. Beginning in the fall of 1987, Ford New Holland supplied Van's Tractor with goods and financing. Van's Tractor consented to this relationship and believed it was a Ford New Holland dealer.

Furthermore, the assignment was more than just a product change, which is what Ford New Holland would have us believe. As the District Court found:

> Ford New Holland's position that it was entitled to the
> assets but not the liabilities of the Versatile Agreement
> is itself sufficient evidence of a change in the duties
> and obligations under the Versatile Agreement to create
> a new agreement to which the requirements of MCA § 30-11-
> 801 et. seq. otherwise apply.

This refers to Ford New Holland's refusal to be bound by any obligations of Versatile in relation to the Noble plow line.

In support of its ruling the District Court cited Kealey Pharmacy & Home Care Serv. v. Walgreen Co. (W.D. Wi. 1982), 539 F.Supp. 1357, modified, 761 F.2d 345, damages set, 607 F.Supp 155. That case supports the view that a non-retroactive statute applies to contracts originally entered before the statute was enacted and which have been significantly altered after the effective date of the statute.

As stated by the District Court, one result of the 1987 sale of Versatile to Ford New Holland and others was that Vicon was responsible for crediting Van's Tractor for returns of Noble parts for which Ford New Holland was, at the same time, attempting to collect payment. As Robert Van Riper testified, during the months of delay before Van's Tractor received payment from Vicon for the $11,000 in returned Noble parts, Van's Tractor was placed, without notice, on C.O.D. status for parts shipped by Ford New Holland.

Another result of the sale of Versatile was that Ford New Holland required Van's Tractor to submit a completely new application for a dealership. Requiring this application exceeded the scope of periodic financial reporting allowed under the Versatile agreement. It was, in fact, akin to making a fresh

6

decision whether to continue the contractual relationship between Ford New Holland and Van's Tractor. (Ford New Holland, however, never approved the new dealership application.)

We conclude that the 1987 sale of assets by Versatile to Ford New Holland and others significantly altered the dealership relationship and contract. We hold that the District Court did not err in applying §§ 30-11-802 and -803, MCA, to the Versatile Agreement between Van's Tractor and Ford New Holland.

## II

Did the District Court err in concluding that Ford New Holland violated §§ 30-11-802 and -803, MCA?

The District Court concluded that actions taken by Ford New Holland violated §§ 30-11-802 and -803, MCA. The argument of Ford New Holland that these violations did not occur depends on its position that the terms of the Versatile dealership contract can negate statutory requirements. Such is not the case. Contracts which are in violation of the policy of an express law are unlawful. Section 28-2-701, MCA.

Section 30-11-802, MCA, provides:

> No grantor may, directly or indirectly, terminate, cancel, fail to renew, or substantially change the competitive circumstances of a dealership agreement without good cause. The burden of proving good cause is on the grantor.

The District Court concluded that Ford New Holland changed the competitive circumstances of its dealership agreement with Van's

7

Tractor without good cause and in violation of § 30-11-802, MCA, in seven separate ways:

> unilaterally placing Van's Tractor in attrition status without reasonable notice or the opportunity to avoid further investment;

> without prior notice, depriving Van's Tractor of the possibility of transferring the Versatile dealership to a qualified buyer;

> requesting the resignation of Van's Tractor and threatening termination of the franchise on the erroneous pretext that the Van Ripers had sold the business and then, upon being advised of the true facts, maintaining its erroneous position that Van's Tractor had breached its dealership agreement by attempting to sell the franchise;

> establishing a second Versatile franchise in the Havre area when it was aware that two such dealers could not survive;

> refusing to remove Van's Tractor from stop ship status after receiving the payment it had demanded;

> diverting the orders of Van's Tractor for goods without notice and transferring such products to the competing store without notice; and

> continuing adverse credit terms against Van's Tractor (requiring that all purchases be C.O.D.).

The court also concluded that "the conduct of Ford New Holland indirectly terminated Van's Tractor, Inc. as a Ford New Holland dealer without good cause." The record supports the conclusions of the District Court as to the violations by Ford New Holland of § 30-11-802, MCA.

Section 30-11-803, MCA, provides in relevent part:

(1) Except as provided in subsections (2) and (3), a grantor shall provide a dealer at least 90 days' prior written notice by certified mail of termination, cancellation, nonrenewal, or substantial change in

8

competitive circumstances. The notice must state all the reasons for termination, cancellation, nonrenewal, or substantial change in competitive circumstances and must provide that the dealer has 60 days from receipt of the notice in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days, the notice is void.

(2) If the reason for termination, cancellation, nonrenewal, or substantial change in competitive circumstances is nonpayment of sums due under the dealership, the dealer is entitled to 10 days' prior written notice by certified mail. If the dealer does not remedy such default within 10 days after receipt of the notice, the notice is effective according to its terms.

The court concluded that Ford New Holland violated § 30-11-803, MCA, by terminating Van Tractor's franchise without notice, failing to notify Van's Tractor of its original attrition plan, and leaving Van's Tractor on "stop ship" status after Van's Tractor paid the disputed parts account. The record supports these conclusions.

We hold that the District Court did not err in concluding that Ford New Holland violated §§ 30-11-802 and -803, MCA.


III

Did Ford New Holland breach the implied covenant of good faith and fair dealing?

The parties agree that damages are the same under this theory and the theory of statutory violations discussed in Issue II. Because we have ruled that the District Court did not err in finding that the statutory violations occurred, we need not address whether Ford New Holland also breached the implied covenant of good faith and fair dealing.

IV

9

Did the District Court err in awarding damages?

Ford New Holland argues that the District Court erred in awarding damages for lost profits for a period of ten years into the future because the evidence supporting that award was admitted erroneously. It asserts that the expert for Van's Tractor, Mr. Stuart, did not independently evaluate the relevant Havre market and that he based his figures on a _five_ year evaluation done by Ford in connection with a different store. Ford New Holland asserts that the damages awarded for ten years into the future were purely speculative.

When injury caused by a breach of a contract is certain, damages for lost profits may be awarded even though the amount of damage is uncertain. Hostetter v. Donlan (1986), 221 Mont. 380, 382-83, 719 P.2d 1243, 1245. Van's Tractor points out that the damages it was awarded were half of Mr. Stuart's projection, and that a five-year profit projection based solely on the Ford New Holland projections suggested lost profits with a present value of $698,040. Ford New Holland's own expert projected lost profit with an upper range of $501,885.

We hold that the damage award of $443,000 was not error.

### V

Did the District Court err in awarding attorney fees?

The first argument of Ford New Holland on this issue, that Van's Tractor was not entitled to attorney fees under contract or statute, is negated by our holdings under Issues I and II. Section

30-11-811, MCA, provides that reasonable attorney fees may be awarded for violation of §§ 30-11-801 through -811, MCA.

Ford New Holland also argues that the District Court miscalculated attorney fees. It points out that the claims of the individual plaintiffs, Robert and Jean Van Riper, and several theories of recovery were abandoned prior to trial and states that the attorney fees awarded exceed those called for in the contingent fee agreement between Van's Tractor and its attorneys.

The District Court cited and applied the eight-part standard set forth in Stimac v. State (1991), 248 Mont. 412, 417, 812 P.2d 1246, 1249, for determining the appropriate amount of attorney fees. The court pointed out that this case involved a novel and difficult question of interpretation of statutes which had not been previously construed. It acknowledged that the case involved a series of complicated factual issues. It noted the substantial commitment of time made by the lawyers for Van's Tractor and their support staff and that this case required over three and one-half years to complete. The court reasoned that this case was an important one, that the result obtained was favorable to Van's Tractor, and that counsel for Van's Tractor are experienced and skilled in the litigation of this type of business case. The court further pointed out that Van's Tractor entered an agreement with its attorneys to pay them a contingent fee of one-third of any recovery obtained, or forty percent of recovery in the event of any appeal, and that, under that agreement, counsel risked the

11

possibility of no recovery. The court also stated its intent to do as little harm as possible to the completeness of the damages awarded to Van's Tractor as a result of the attorney fees it must pay its counsel.

We conclude that the District Court acted properly in applying the statute allowing an award of attorney fees and in setting those fees according to the criteria set forth in Stimac. We hold that the District Court did not err in awarding attorney fees of $162,000.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

12

Justice Fred J. Weber dissents as follows:

I dissent from the majority opinion which awards damages, costs and fees against Ford New Holland for violations of §§ 30-11-802 and 803, MCA.

I will set forth the essential terms of the two contracts which are pivotal to the decision. The first is the Dealer Sales and Services Agreement (herein called Dealer Agreement) dated November 2, 1983 between Versatile Farm Equipment Corporation (herein Versatile) and Van's Tractor, Inc. (herein Van's Tractor). The non-exclusive right to sell products of Versatile granted to Van's Tractor is contained in the following paragraph:

> 1.1 The Company hereby grants to the Dealer the non-exclusive right to sell the products of the Company as hereinafter defined. . . . All transactions between the Company and the Dealer shall be governed by this Agreement unless the parties specifically agree otherwise in writing.

I emphasize that Van's Tractor was given a non-exclusive right to sell Versatile products and that all transactions between Van's Tractor and Versatile were to be governed by the Dealer Agreement. While the Dealer Agreement did provide that the parties could otherwise agree in writing, there is no such agreement in the record. As a result, the transactions between Van's Tractor and Versatile were governed by the Dealer Agreement.

The products covered by the Dealer Agreement are as follows:

> 2.1 Products covered by this Agreement are all those items of agricultural tractors, machines, and equipment . . . listed in a current price list . . . issued by the Company [Versatile] from time to time

13

together with all attachments and accessories thereto . . . Each successive Machinery Price List and Parts Price List when issued is deemed to be a part of this Agreement. . . .

Under this paragraph the products covered by the Dealer Agreement were determined by Versatile from time to time as it issued current price lists. Under the agreement Versatile was given the right to eliminate any portion of its equipment lines without the right to object on the part of Van's Tractor. As a result Versatile had the power to eliminate the Noble line of equipment if it chose. Such elimination is a factor relied upon in the majority opinion without a consideration of the power to eliminate the Noble line of equipment which Van's Tractor granted to Versatile.

Versatile was given the right to refuse to sell and deliver products under certain conditions in the following Dealer Agreement provision:

6.3 The Company [Versatile] may refuse to sell or deliver Products to the Dealer [Van's Tractor] at any time under the terms of payment, herein set forth, or in any purchase order of the Dealer, whether or not previously accepted or approved, when in its opinion the conditions of the current account or financial standing of the Dealer do not warrant further sales or deliveries upon such terms.

Versatile was given the right to refuse to sell products to Van's Tractor when in its opinion the condition of the current account or financial standing of Van's Tractor did not warrant further sales.

In addition the Dealer Agreement contains extensive termination provisions in part 21, which in pertinent part provide:

21.1 This Agreement shall continue in effect until terminated as hereinafter provided. This Agreement may

**14**

be terminated immediately, at the Company's [Versatile] option, by giving notice by hand, verified telex or telecopier or by registered mail, postage prepaid to the last known address of the Dealer [Van's Tractor] at any time after the occurrence of any of the following events:

. . .

    (d) default of any indebtedness of the Dealer to the Company . . .

. . .

    (g) if the Company, in good faith, believes that the prospect of payment or performance hereunder is impaired or that the Products or any part thereof are in danger of being lost, damaged or confiscated.

Substantial rights in the Dealer Agreement were transferred by Versatile to Ford New Holland under the Assignment and Assumption Agreement dated July 10, 1987 (herein called Assignment), which in pertinent part provided:

    2. Assignment.

    (a) VFEC [Versatile] hereby irrevocably assigns, transfers, sells and conveys to NH [Ford New Holland] all of VFEC's right, title and interest in and to the U.S. Dealer Agreements [specifically including the Versatile-Van's Tractor Agreement] to the extent the same relates to the Business [all business carried on by Versatile in the distribution and sale of equipment but excluding the Noble Business], including all right of action and all other rights accruing to VFEC thereunder.

    (b) For greater clarity and certainty, it is hereby agreed that VFEC shall retain unto itself all of its right, title and interest in the U.S. Dealer Agreements to the extent same relate to the Noble Business.

. . .

    3. Assumption. NH [Ford New Holland] hereby accepts the assignment of VFEC's [Versatile's] right, title and interest in and to the U.S. Dealer Agreements as above provided, and agrees to observe, perform and discharge the covenants and obligations of VFEC related to the Business under the U.S. Dealer Agreements in accordance with their respective terms to the extent that the same shall arise or accrue at any time after the date hereof and relate to periods commencing after the date hereof.

The Assignment irrevocably transferred from Versatile to Ford New Holland all of Versatile's right, title and interest in the Dealer Agreement with Van's Tractor as it related to Versatile equipment, but specifically excluded all Noble Business which was defined as the business carried on by Versatile Noble Cultivators Company. Under the Assumption portion of the Assignment, Ford New Holland accepted the assignment from Versatile and agreed to observe, perform and discharge all of the obligations under the Assignment in accordance with its terms. I emphasize that no consent on the part of Van's Tractor or any other dealer was required under the terms of the Assignment. It is critical to note that there are no terms of the Dealer Agreement or of the Assignment, or of any other instrument in writing which requires consent by Van's Tractor to the assignment by Versatile to Ford New Holland. Nothing in the written record supports a conclusion that the Assignment from Versatile to Ford New Holland modified the contract relationship under the Dealer Agreement with Van's Tractor so far as all Versatile equipment was concerned.

The majority points out that Ford New Holland contended that the application of §§ 30-11-802 and 803, MCA, is a prohibited retroactive application because the statutes were enacted in 1985, two years after the contract between Versatile and Van's Tractor was executed. These code provisions in pertinent part provide:

**30-11-802.** **Cancellation and alteration of dealerships.** No grantor may, directly or indirectly, terminate, cancel, fail to renew, or substantially change the competitive circumstances of a dealership agreement

**16**

without good cause.  The burden of proving good cause is on the grantor.

> **30-11-803. Notice of termination or change in dealership.** (1) . . . a grantor shall provide a dealer at least 90 days' prior written notice by certified mail of termination, cancellation, nonrenewal, or substantial change in competitive circumstances.  The notice must state all the reasons for termination, cancellation, nonrenewal, or substantial change in competitive circumstances and must provide that the dealer has 60 days from the receipt of the notice in which to rectify any claimed deficiency.  If the deficiency is rectified within 60 days, the notice is void.

Section 802 is construed by the majority opinion as limiting the power of Ford New Holland to terminate, cancel or substantially change the competitive circumstances of the Dealer Agreement without good cause and, placed the burden of proving such good cause on Ford New Holland.  In a similar manner, the majority opinion concludes that under § 803, notice of termination or change in dealership is required, and if a deficiency specified in a notice is corrected in accordance with the statute, then the notice is void.  I emphasize the clear contradiction between these code section provisions and the rights given to the parties under the terms of the Dealer Agreement itself.  The majority opinion has concluded that the Dealer Agreement provisions may be totally disregarded because of the controlling effect of the subsequently enacted statutes.  Clearly these code sections directly contradict the rights given to the parties under the Dealer Agreement.

In Part I of the majority opinion, the key conclusion is stated as follows:

17

We conclude that the 1987 sale of assets by Versatile to Ford New Holland and others significantly altered the dealership relationship and contract.

I disagree with the foregoing conclusions. The Assignment of the Dealer Agreement is not prohibited or restricted under such Dealer Agreement and by its terms does not in any way result in a new dealership relationship or contract.

In Part I of the majority opinion, the statement is made that the Assignment was more than just a product change as Ford New Holland would have us believe. The majority refers to the District Court finding and then states: "This refers to Ford New Holland's refusal to be bound by any obligations of Versatile in relation to the Noble plow line." The record does not support that statement. As previously quoted, the Assignment from Versatile to Ford New Holland transferred all title and interest in U.S. dealer agreements, including the Versatile-Van's Tractor Agreement, to the extent that the contract related to the business carried on by Versatile in the distribution and sale of equipment "but excluding the Noble business." It is not appropriate to suggest that Ford New Holland in some manner refused to be bound by the obligations of Versatile in relation to the Noble plow line. The record clearly establishes that Versatile transferred all of its interest in the Dealer Agreements regarding the Noble plow line to a different entity. Again, I find that such division by Versatile of its interest in the Versatile-Van's Tractor Agreement so that it transferred one portion to Ford New Holland and the other portion

18

to another party is not prohibited under the Dealer Agreement.

The majority concluded that the 1987 sale of assets to Ford New Holland significantly altered the dealership relationship and contract. As authority for that conclusion, the majority relies on <u>Kealey Pharmacy & Home Care Serv. v. Walgreen Co</u>., a decision of a federal court in the western district of Wisconsin, which concluded that a non-retroactive statute applies to contracts which have been significantly altered after the effective date of the statute. That is very limited case authority for the guidance of this Court. As previously pointed out, the record contains nothing which demonstrates that Van's Tractor was required to execute an agreement of any kind as a result of the Assignment by Versatile to Ford New Holland. Apparently the majority concludes that something in the nature of a "new contract" was executed between Ford New Holland and Van's Tractor so that subsequently enacted statutes apply. No "new contract" of any type was executed between Ford New Holland and Van's Tractor. The record contains nothing which establishes something in the nature of a "new contract." As a result I do not know of a proper legal basis for the conclusion of the majority.

I conclude there was not a significant alteration of the rights and responsibilities of Van's Tractor as a result of the Assignment. So far as the questions raised by Van's Tractor regarding credit for returned Noble parts, that is an issue which required determination under the existing contract. There is

**19**

nothing in that transaction which requires a conclusion that a "new contract" was executed. I can find no legal basis upon which to conclude that §§ 30-11-802 and 803, MCA, should be applied to the Dealer Agreement and Assignment to Ford New Holland. I would reverse on that issue.

The majority opinion refers to the application for a dealership submitted by Van's Tractor to Ford New Holland. Again I believe this to be irrelevant as in fact no new agreement was executed.

Issue II addresses whether the District Court erred in concluding that Ford New Holland violated §§ 30-11-802 and 803, MCA. When enacted in 1985, these code sections were not made retroactive. Article II, Section 31 of the Montana Constitution provides:

> **Ex post facto, obligation of contracts, and irrevocable privileges.** No ex post facto law nor any law impairing the obligation of contracts, or making any irrevocable grant of special privileges, franchises, or immunities, shall be passed by the legislature.

The Constitution prohibits the enactment by the legislature of a law impairing the obligation of contracts. I conclude the majority's interpretation has impaired the obligation of contracts under the Assignment and the Dealer Agreement. I would reverse on Issue II.

In Issue III the majority opinion concludes that it is not necessary to determine if Ford New Holland breached the implied

covenant of good faith and fair dealing.  I would conclude that this is the only issue which should be considered on retrial.

I would reverse and remand for new trial on the issue of the breach of the implied covenant of good faith and fair dealing.

_____
Justice

Chief Justice J.A. Turnage and Justice Karla M. Gray concur in the foregoing dissent.

_____
Chief Justice

_____
Justice