JUSTICE McDONOUGH
delivered the Opinion of the Court.
Ford New Holland, Inc. (Ford New Holland), appeals from ajudgment entered by the District Court for the Eighth Judicial District, Cascade County. The court assessed damages, costs, and attorney fees against Ford New Holland for violations of §§ 30-11-802 and -803, MCA, and breach of the covenant of good faith and fair dealing. Ford New Holland appeals. We affirm.
The issues are:
1. Did the District Court err by applying §§ 30-11-802 and -803, MCA, to the Versatile Agreement?
2. Did the District Court err in concluding that Ford New Holland violated §§ 30-11-802 and -803, MCA?
3. Did Ford New Holland breach the implied covenant of good faith and fair dealing?
4. Did the District Court err in awarding damages?
5. Did the District Court err in awarding attorney fees?
Robert and Jean Van Riper (the Van Ripers), owned and operated Van’s Tractor, Inc. (Van’s Tractor), in Havre, Montana. Van’s Tractor sold new and used tractors and other farm equipment. Van’s Tractor entered a dealership agreement with Versatile Farm Equipment (Versatile) on November 2, 1983.
In 1987, Versatile, then in bankruptcy, sold certain of its assets, including the Van’s Tractor Versatile franchise, to Ford New Holland, a subsidiary of Ford Motor Company. Versatile sold other of its assets, including a Noble plow line, to Vicon Farm Equipment, Inc., a corporation unrelated to Ford New Holland. Van’s Tractor decided not to continue selling Noble products and returned its supply of Noble parts to Vicon.
Corporate mergers resulted in Ford New Holland then having two outlets in Havre, Van’s Tractor and an existing “company store.” The goal of Ford New Holland was to have one dealer in Havre. It sought a dealer who would buy out its interest in the company store. Van’s Tractor was a prospective purchaser. However, Ford New Holland *209 determined that Van’s Tractor would not be its full-line dealer in Havre. Ford New Holland did not notify Van’s Tractor of this decision.
In the fall of 1987, Ford New Holland designated Van’s Tractor for attrition as a Versatile dealer. The designation meant Van’s Tractor could not transfer its Ford New Holland dealership and had no future as a Ford New Holland dealer. Ford New Holland did not notify Van’s Tractor of this designation.
From 1987 to 1988, the net worth of Van’s Tractor declined. In the year ending April 1988, Van’s Tractor sold only one piece of Versatile equipment. The Van Ripers attempted to sell Van’s Tractor and received an offer in April of 1988, but Ford New Holland refused to approve transfer of the dealership. Ford New Holland then asked that Van’s Tractor resign its dealership because it had attempted to sell the franchise. Van’s Tractor refused.
In April 1988, Ford New Holland decided to terminate the Van’s Tractor dealership based on the refusal by Van’s Tractor to pay an $11,000 disputed bill. The position of Van’s Tractor as to this bill was that it would not pay the bill until it was credited for Noble parts it originally had obtained from Versatile and had returned to Vicon. The position of Ford New Holland was that although it had the right to collect the accounts of Versatile, it had no responsibility to fulfill the obligations of Versatile which had been assumed by Vicon.
Subsequently, Ford New Holland placed Van’s Tractor on “stop ship” status and withdrew its credit line. On May 20,1988, Ford New Holland drafted a letter demanding that Van’s Tractor pay the bill within ten days or be terminated as a dealer. Termination proceedings began on May 27, 1988. Van’s Tractor did not receive Ford New Holland’s demand letter until June 6, 1988, but it paid the disputed amount within ten days of that date.
Despite payment, Ford New Holland did not remove Van’s Tractor from “stop ship” status. As a result, Ford New Holland shipped a four-wheel drive tractor and a Versatile swather ordered by Van’s Tractor to the competing dealer in Havre. Van’s Tractor was unable to obtain any parts until August 23,1988. Van’s Tractor resigned its dealership in September of 1988, and then brought this lawsuit.
The case was tried to the court sitting without a jury. The court dismissed all individual claims of Robert and Jean Van Riper and all claims against Ford Motor Credit. The court found in favor of Van’s Tractor on its claims against Ford New Holland and awarded $443,000 in damages, attorney fees of $162,000, and $12,393 in costs. Ford New Holland appeals.
*210 I
Did the District Court err by applying §§ 30-11-802 and -803, MCA, to the Versatile Agreement?
The District Court found that Ford New Holland violated both § 30-11-802, MCA, and § 30-11-803, MCA. Ford New Holland contends that application of these statutes in this case is a prohibited retroactive application because the statutes were enacted in 1985, two years after the contract was entered between Versatile and Van’s Tractor.
The record demonstrates that in the spring of 1987, Versatile was insolvent and in receivership. It had ceased manufacturing, was negotiating liquidation of its assets, and was in bankruptcy. FordNew Holland assumed and undertook the duties and responsibilities of Versatile with respect to certain dealerships, including Van’s Tractor. Versatile had no intention of being responsible any longer under its dealership agreements; it was out of business. Beginning in the fall of 1987, Ford New Holland supplied Van’s Tractor with goods and financing. Van’s Tractor consented to this relationship and believed it was a Ford New Holland dealer.
Furthermore, the assignment was more than just a product change, which is what Ford New Holland would have us believe. As the District Court found:
Ford New Holland’s position that it was entitled to the assets but not the liabilities of the Versatile Agreement is itself sufficient evidence of a change in the duties and obligations under the Versatile Agreement to create a new agreement to which the requirements of MCA § 30-11-801 et. seq. otherwise apply.
This refers to Ford New Holland’s refusal to be bound by any obligations of Versatile in relation to the Noble plow line.
In support of its ruling the District Court cited Kealey Pharmacy & Home Care Serv. v. Walgreen Co. (W.D. Wi. 1982), 539 F.Supp. 1357, modified, 761 F.2d 345, damages set, 607 F.Supp 155. That case supports the view that a non-retroactive statute applies to contracts originally entered before the statute was enacted and which have been significantly altered after the effective date of the statute.
As stated by the District Court, one result of the 1987 sale of Versatile to Ford New Holland and others was that Vicon was responsible for crediting Van’s Tractor for returns of Noble parts for which Ford New Holland was, at the same time, attempting to collect payment. As Robert Van Riper testified, during the months *211 of delay before Van’s Tractor received payment from Vicon for the $11,000 in returned Noble parts, Van’s Tractor was placed, without notice, onC.O.D. status for parts shipped by Ford New Holland.
Another result of the sale of Versatile was that Ford New Holland required Van’s Tractor to submit a completely new application for a dealership. Requiring this application exceeded the scope of periodic financial reporting allowed under the Versatile agreement. It was, in fact, akin to making a fresh decision whether to continue the contractual relationship between Ford New Holland and Van’s Tractor. (Ford New Holland, however, never approved the new dealership application.)
We conclude that the 1987 sale of assets by Versatile to Ford New Holland and others significantly altered the dealership relationship and contract. We hold that the District Court did not err in applying §§ 30-11-802 and -803, MCA, to the Versatile Agreement between Van’s Tractor and Ford New Holland.
II
Did the District Court err in concluding that Ford New Holland violated §§ 30-11-802 and -803, MCA?
The District Court concluded that actions taken by Ford New Holland violated §§ 30-11-802 and -803, MCA. The argument of Ford New Holland that these violations did not occur depends on its position that the terms of the Versatile dealership contract can negate statutory requirements. Such is not the case. Contracts which are in violation of the policy of an express law are unlawful. Section 28-2-701, MCA.
Section 30-11-802, MCA, provides:
No grantor may, directly or indirectly, terminate, cancel, fail to renew, or substantially change the competitive circumstances of a dealership agreement without good cause. The burden of proving good cause is on the grantor.
The District Court concluded that Ford New Holland changed the competitive circumstances of its dealership agreement with Van’s Tractor without good cause and in violation of § 30-11-802, MCA, in seven separate ways:
unilaterally placing Van’s Tractor in attrition status without reasonable notice or the opportunity to avoid further investment; without prior notice, depriving Van’s Tractor of the possibility of transferring the Versatile dealership to a qualified buyer;
*212 requesting the resignation of Van’s Tractor and threatening termination of the franchise on the erroneous pretext that the Van Ripers had sold the business and then, upon being advised of the true facts, maintaining its erroneous position that Van’s Tractor had breached its dealership agreement by attempting to sell the franchise;
establishing a second Versatile franchise in the Havre area when it was aware that two such dealers could not survive; refusing to remove Van’s Tractor from stop ship status after receiving the payment it had demanded;
diverting the orders of Van’s Tractor for goods without notice and transferring such products to the competing store without notice; and continuing adverse credit terms against Van’s Tractor (requiring that all purchases be C.O.D.).
The court also concluded that “the conduct of Ford New Holland indirectly terminated Van’s Tractor, Inc. as a Ford New Holland dealer without good cause.” The record supports the conclusions of the District Court as to the violations by Ford New Holland of § 30-11-802, MCA.
Section 30-11-803, MCA, provides in relevant part:
(1) Except as provided in subsections (2) and (3), a grantor shall provide a dealer at least 90 days’ prior written notice by certified mail of termination, cancellation, nonrenewal, or substantial change in competitive circumstances. The notice must state all the reasons for termination, cancellation, nonrenewal, or substantial change in competitive circumstances and must provide that the dealer has 60 days from receipt of the notice in which to rectify any claimed deficiency. If the deficiency is rectified within 60 days, the notice is void.
(2) If the reason for termination, cancellation, nonrenewal, or substantial change in competitive circumstances is nonpayment of sums due -under the dealership, the dealer is entitled to 10 days’ prior written notice by certified mail. If the dealer does not remedy such default within 10 days after receipt of the notice, the notice is effective according to its terms.
The court concluded that Ford New Holland violated § 30-11-803, MCA, by terminating Van Tractor’s franchise -without notice, failing to notify Van’s Tractor of its original attrition plan, and leaving Van’s Tractor on “stop ship” status after Van’s Tractor paid the disputed parts account. The record supports these conclusions.
*213 We hold that the District Court did not err in concluding that Ford New Holland violated §§ 30-11-802 and -803, MCA.
Ill
Did Ford New Holland breach the implied covenant of good faith and fair dealing?
The parties agree that damages are the same under this theory and the theory of statutory violations discussed in Issue II. Because we have ruled that the District Court did not err in finding that the statutory violations occurred, we need not address whether Ford New Holland also breached the implied covenant of good faith and fair dealing.
IV
Did the District Court err in awarding damages?
Ford New Holland argues that the District Court erred in awarding damages for lost profits for a period of ten years into the future because the evidence supporting that award was admitted erroneously. It asserts that the expert for Van’s Tractor, Mr. Stuart, did not independently evaluate the relevant Havre market and that he based his figures on a five year evaluation done by Ford in connection with a different store. Ford New Holland asserts that the damages awarded for ten years into the future were purely speculative.
When injury caused by a breach of a contract is certain, damages for lost profits may be awarded even though the amount of damage is uncertain. Hostetler v. Donlan (1986), 221 Mont. 380, 382-83, 719 P.2d 1243, 1245. Van’s Tractor points out that the damages it was awarded were half of Mr. Stuart’s projection, and that a five-year profit projection based solely on the Ford New Holland projections suggested lost profits with a present value of $698,040. Ford New Holland’s own expert projected lost profit with an upper range of $501,885.
We hold that the damage award of $443,000 was not error.
V
Did the District Court err in awarding attorney fees?
The first argument of Ford New Holland on this issue, that Van’s Tractor was not entitled to attorney fees -under contract or statute, is negated by our holdings under Issues I and II. Section 30-11-811, MCA, provides that reasonable attorney fees may be awarded for violation of §§ 30-11-801 through -811, MCA.
*214 Ford New Holland also argues that the District Court miscalculated attorney fees. It points out that the claims of the individual plaintiffs, Robert and Jean Van Riper, and several theories of recovery were abandoned prior to trial and states that the attorney fees awarded exceed those called for in the contingent fee agreement between Van’s Tractor and its attorneys.
The District Court cited and applied the eight-part standard set forth in Stimac v. State (1991), 248 Mont. 412, 417, 812 P.2d 1246, 1249, for determining the appropriate amount of attorney fees. The court pointed out that this case involved a novel and difficult question of interpretation of statutes which had not been previously construed. It acknowledged that the case involved a series of complicated factual issues. It noted the substantial commitment of time made by the lawyers for Van’s Tractor and their support staff and that this case required over three and one-half years to complete. The court reasoned that this case was an important one, that the result obtained was favorable to Van’s Tractor, and that counsel for Van’s Tractor are experienced and skilled in the litigation of this type of business case. The court further pointed out that Van’s Tractor entered an agreement with its attorneys to pay them a contingent fee of one-third of any recovery obtained, or forty percent of recovery in the event of any appeal, and that, under that agreement, counsel risked the possibility of no recovery. The court also stated its intent to do as little harm as possible to the completeness of the damages awarded to Van’s Tractor as a result of the attorney fees it must pay its counsel.
We conclude that the District Court acted properly in applying the statute allowing an award of attorney fees and in setting those fees according to the criteria set forth in Stimac. We hold that the District Court did not err in awarding attorney fees of $162,000.
Affirmed.
JUSTICES HARRISON, HUNT and TRIEWEILER concur.