DA 06-0373

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 201

KRIS L. KUHR, CARL L. ZABROCKI, ED NEWLIN, DONALD
REGNIER, GILBERT SOMMERVILLE, WALT KUHR, RON
MARTIN, URIAH THATCHER, VINCE CHRISTENSEN,
GARY PUCKETT, RICK ELSENPETER, MILO LAMPHIER,
MICHAEL ERBEN, WAYNE HIRSHI, LARRY RENNICH,
GEORGE WALKKI, RONALD D. SNELLING, LESLIE SOHLHIEM,
MARK PADDOCK, JEFFREY M. BRANDT, ROBERT B. DUNN,
JEFF BLOOM, GREG BOCHY, MATTHEW J. HOPPEL,
JOE E. KEENER, FRANCIS A. EWALT, GENE A. SPEIDEL,
CLAYTON L. POST, KELLY FUGERE, STEVE WILSON,
JAMES MANNING MERTZ, HERMAN ROOKHAIZEN, BRET A.
THORMAHLEN, STEPHEN P. HOKLIN, JAMES V. DAY,
SANDY ROGERS, MICHAEL W. MARTIN, EDWARD J.
RIESINGER, LEE BRADY, KEVIN BENTZ, WADE MADISON,
TERRY O'TOOLE, LARRY PINNOW, LAWRENCE J. HART,
BRIAN D. CORNELIUSEN, TERRY LARSON, ALAN HARPER,
ALLAN D. MARKUSON, JASON FRANK, VERNON MASHEK,
MARCUS EVENSON, TOOD B. KINKHEAD, PATRICK J. NISSEN,
MITCHELL W. ERDMANN, TIMOTHY A. McLEOD, ROBERT D.
MEYER, THEORDIS WARREN, JAMES LYNCH, GREGORY S.
DILLON, DERRECK MITCHELL, JOHN R. DILLON, WAYNE M.
FISHER, and WILLIAM T. HARVEY,

        Plaintiffs, Respondents, and Cross-Appellants,

   v.

CITY OF BILLINGS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                 In and For the County of Yellowstone, Cause No. DV-00-160
                 Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Charles B. Brooks, City Attorney, Billings, Montana

Richard Larson, Harlen, Chronister, Parish & Larson, P.C., Helena, Montana

For Respondents:

Lawrence A. Anderson, Attorney at Law, Great Falls, Montana

Gene R. Jarussi, Jarussi & Bishop, Billings, Montana

Submitted on Briefs: August 9, 2007

Decided: August 15, 2007

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    This appeal arises from a wage claim filed by the plaintiffs, all firefighters (Firefighters) formerly or currently employed by the City of Billings (City). The City appeals from the Thirteenth Judicial District Court's order granting the Firefighters' motion for partial summary judgment and from the court's judgment awarding damages to the Firefighters for unpaid wages and leave time, and awarding a penalty, attorney fees, and costs. The Firefighters cross-appeal the amount of damages for unpaid wages and leave time, and the amount of the penalty, attorney fees, and costs. We affirm in part, reverse in part, and remand.

¶2    We restate the issues on appeal as follows:

1. Did the District Court err in granting the Firefighters' motion for partial summary judgment concluding the City was liable for unpaid wages and leave time?

2. Did the District Court err in assessing the penalty for the City's failure to pay wages?

3. Did the District Court err in awarding costs to the Firefighters?

4. Did the District Court abuse its discretion in awarding attorney fees to the Firefighters?

## BACKGROUND

¶3    The City and the Local 521 International Association of Fire Fighters, on behalf of the Firefighters, entered into a collective bargaining agreement with regard to employer-employee relations, wages, hours and other conditions of employment, and to provide a means of resolving grievances. The agreement was renewed every two or three years.

3

¶4     The agreement in effect prior to July 1, 1995 (the pre-1995 agreement) provided the following pay formula:

   a. Hourly rate is based on 2,080 hours per year.  To determine this figure, annual base salary will be divided by 2,080 hours.
   b. Formula for Regular Monthly Salary: Twenty-six (26) times the last full regular pay, (base pay plus longevity plus holiday pay) divided by twelve (12) equals regular monthly salary.  (26 x 1 frp./12 = rms)
   c. Regular paydays will be every other Friday.

The salary schedule attached to the pre-1995 agreement set forth a base salary dependent on a firefighter's position.  For example, the base salary listed for a Firefighter 1 position for 1994-1995 was $2,069.79, which was then used to calculate a firefighter's regular monthly salary.

¶5     The agreement that went into effect on July 1, 1995 (the post-1995 agreement) provided the following pay formula:

   a. Annual base salary is equal to 2080 hours x hourly base rate of pay listed on the attached Salary Schedule.  Hourly base rate is base pay plus special certification pay.
   b. Regular payday will be every other Friday.

The salary schedule attached to the post-1995 agreement set forth a base hourly salary. In this case, a Firefighter 1, in 1995-1996, received the base pay of $12.5624 per hour, plus special certification pay of $0.1731 per hour if eligible.

¶6     The Firefighters' work schedule set forth in both pre-1995 and post-1995 agreements was as follows:

   The work schedule shall be a 27-day total work cycle consisting of seven (7) consecutive work shifts of twenty-four (24) hours on duty and forty-eight (48) hours off duty, immediately followed by six (6) consecutive days off.

4

Based on this work schedule, the Firefighters worked approximately 2,272 hours per year. When the Firefighters were paid every other Friday, the pay stub reflected that they were paid for forty hours per week, regardless of whether they worked more or less than forty hours per week. Although schedules were kept, which would indicate the number of hours worked by the Firefighters, the actual number of hours worked was not sent to the payroll department. This resulted in the Firefighters being paid for only 2,080 hours each year, rather than the 2,272 hours the Firefighters worked each year while on the 27-day work schedule.

¶7 Seventeen Firefighters filed a complaint alleging that the City failed to properly account for or pay the Firefighters for all hours worked and for earned leave time. They claimed that pursuant to Article XII, Section 2(2) of the Montana Constitution, the City was liable for its failure to pay for or account for hours worked in excess of eight hours per day. Further, they alleged the City's failure to pay wages entitled the Firefighters to a penalty. The Firefighters requested that a class be certified and a common fund be established.

¶8 The Firefighters filed a motion for partial summary judgment. They argued that they had a constitutional right to be paid for every hour they worked in excess of an eight-hour day, and that this right could not be waived or bargained away. They did not argue that they were entitled to overtime for those hours worked, but that the hours were unpaid "straight time." The Firefighters did not base their claim on any violations of the Fair Labor Standards Act (FLSA). Further, the Firefighters claimed, in addition to straight time, the City failed to properly account for and pay sick and vacation leave time.

5

The City responded that the eight-hour work day provision in the Montana Constitution had no application in this case in light of §§ 39-4-107 and 39-3-406, MCA, which provide that the eight-hour day does not apply to firefighters working under an established collective bargaining agreement. The City noted that the Firefighters did not allege a violation of any terms of the collective bargaining agreement. The City then filed its own motion requesting summary judgment on all of the Firefighters' issues.

¶9 The District Court rejected the Firefighters' claims that they were entitled to unpaid wages pursuant to Article XII, Section 2, of the Montana Constitution. Instead, the court compared the pre- and post-1995 collective bargaining agreements and determined the matter based on a breach of contract theory. The court found that the pre-1995 agreement was an annual wage contract and the post-1995 agreement was an hourly wage contract. Thus, the pre-1995 agreement provided the exact wage to be paid for the year regardless of the number of hours worked. The post-1995 agreement, on the other hand, required that the Firefighters be paid for each hour worked. Accordingly, the Firefighters were entitled to unpaid straight time from 1995 forward. The court determined that the issue of leave time could be worked out under the agreements as well—that the Firefighters' "leave time should be credited and debited at the same rate."

¶10 The court certified the matter as a class action and defined the class as all past and present firefighters of the City of Billings who work or worked under the 27-day work schedule. The complaint was amended to include dozens more firefighters.

¶11 A bench trial was held on May 3 and 4, 2005, to determine damages. Based on the court's prior conclusion that the post-1995 agreement was an hourly wage contract, the

6

court found at trial that the Firefighters worked approximately 2,272 hours per year but were paid for only 2,080 hours per year, and thus concluded they were entitled to recover for wages and benefits associated with the unpaid hours. The court further concluded that the City did not breach its duty to maintain proper payroll records, and that the records were not falsified or intentionally misleading. The court assessed a penalty against the City in the amount of 8.45 percent of the unpaid wages. After a hearing on the amount of attorney fees and costs, the court awarded $625,000 in attorney fees to the Firefighters, declining to award the full one-third contingency fee the Firefighters requested. The court awarded $3,972.98 in costs, although the Firefighters requested $60,154.72. The City appeals the order granting the Firefighters' motion for partial summary judgment and from the court's judgment awarding damages in the amount of $3,075,590.30, an 8.45 percent penalty in the amount of $253,000, and the above-mentioned attorney fees, and costs. The Firefighters cross-appeal the amount of damages for unpaid wages and leave time, and the amount of the penalty, attorney fees and costs. Other facts will be discussed below as necessary.

**STANDARD OF REVIEW**

¶12 This Court's standard of review of a district court's grant of summary judgment is *de novo*. *Tefft v. State*, 271 Mont. 82, 88, 894 P.2d 317, 321 (1995). A grant of summary judgment is proper only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c); *Tefft*, 271 Mont. at 88, 894 P.2d at 321.

¶13 We review the findings of a trial court sitting without a jury to determine if the court's findings are clearly erroneous. M. R. Civ. P. 52(a); *Reier Broadcasting Co., Inc. v. Reier*, 2000 MT 120, ¶ 19, 299 Mont. 463, ¶ 19, 1 P.3d 940, ¶ 19. A court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Reier Broadcasting Co., Inc.*, ¶ 19 (citations omitted). We review a district court's conclusions of law to determine whether those conclusions are correct. *Reier Broadcasting Co., Inc.*, ¶ 20 (citations omitted).

¶14 This Court's standard of review of a district court's grant or denial of attorney fees and costs is whether the court abused its discretion. *Denton v. First Interstate Bank of Commerce*, 2006 MT 193, ¶ 19, 333 Mont. 169, ¶ 19, 142 P.3d 797, ¶ 19. A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason resulting in substantial injustice. *Pumphrey v. Empire Lath and Plaster*, 2006 MT 255, ¶ 9, 334 Mont. 102, ¶ 9, 144 P.3d 813, ¶ 9. Although this Court recognizes that a district court has broad authority to award costs, the issue raised in this appeal regarding the award of costs involves a question of law as to entitlement to costs. *See Valeo v. Tabish*, 1999 MT 146, ¶ 15, 295 Mont. 34, ¶ 15, 983 P.2d 334, ¶ 15. We review a district court's conclusions of law to determine if they are correct. *Valeo*, ¶ 15.

8

**DISCUSSION**

¶15 **ISSUE 1: Did the District Court err in granting the Firefighters' motion for partial summary judgment concluding the City was liable for unpaid wages and leave time?**

¶16 The City argues on appeal that the District Court erred in granting the Firefighters' motion for partial summary judgment on the basis of a breach of contract theory when the Firefighters' theory of recovery was based on the Montana Constitution's eight-hour day provision. The court disregarded the constitutional argument, stating that Article XII, Section 2, at most "prohibit[s] an employer from compelling an employee to toil more than eight hours as a regular day's work," and that in this case, the Firefighters had agreed to the 27-day work cycle which included working more than eight hours in a day. Therefore, using a "common sense" analysis, the District Court concluded that the pre-1995 agreement was an *annual* wage contract which the City had not breached, and the post-1995 agreement was an *hourly* wage contract which the City had breached.

¶17 The City contends that the court's analysis is flawed because the pre-1995 agreement and post-1995 agreement, while expressing the pay formula in different ways, were intended to compensate the Firefighters the same way. In fact, the City states that it intended to compensate the Firefighters for all hours worked under both pre-1995 and post-1995 agreements. The City draws attention to the fact that both sets of contracts refer to annual base salary and hourly rates. In making that argument, the City exposed itself to the possibility that the courts could conclude that the Firefighters were entitled to an hourly wage and, thus, unpaid straight time under both the pre- and post-1995

9

agreements. However, the Firefighters have not cross-appealed the denial of pre-1995 wages on a breach of contract theory. Thus, the issues before us are whether the District Court erred in concluding that the post-1995 agreement was an hourly wage contract, and secondly, whether the District Court erred in concluding Article XII, Section 2(2) of the Montana Constitution was inapplicable in this case.

> A. *Did the District Court err in concluding that the post-1995 agreement was an hourly wage contract?*

¶18 The interpretation of provisions in a collective bargaining agreement is a question of law. *Hughes v. Blankenship*, 266 Mont. 150, 154, 879 P.2d 685, 687 (1994). In interpreting written contracts, the court must ascertain the intention of the parties from the writing alone. *Wurl v. Polson School Dist. No. 23*, 2006 MT 8, ¶ 16, 330 Mont. 282, ¶ 16, 127 P.3d 436, ¶ 16 (citations omitted). Where a contract provision is clear and unambiguous, a court must apply the language as written. *Wurl*, ¶ 16. If a contract term is ambiguous, interpretation of the term requires resolving a question of fact regarding the intent of the parties to the contract. *Wurl*, ¶ 17. The initial determination of whether an ambiguity exists in a contract is also a question of law for the court's determination. *Wurl*, ¶ 17. An ambiguity exists where the language of the contract, as a whole, could reasonably be subject to two different meanings. *Wurl*, ¶ 17. The fact that the parties disagree as to the meaning of a contract provision does not necessarily create an ambiguity. *Wurl*, ¶ 17.

¶19 In this case, as stated above, the post-1995 agreement provided a pay formula based on hourly base pay plus special certification pay. The "base hourly salaries" were

10

attached as Exhibit A to the post-1995 agreement. Special Certification Pay was defined in the agreement as pay that any member of the fire department would receive if he or she held a certification, such as EMT-basic, hazardous material technician, rope rescue technician, etc. Regardless of how many certifications a member held, the pay was $30 per month. However, this pay was further broken down on Exhibit A as $0.1731 per hour. Further, the agreement provided for Higher Classification Pay, which was paid to any firefighter who was "required to accept the responsibilities and carry out the duties of a position or rank above that which he/she normally holds for a period for two (2) hours or more." This pay was also broken down by hour on Exhibit B of the post-1995 agreement. The pay formula then provided that an annual base salary could be reached by multiplying the hourly base rate by 2,080. Despite this mention of an annual base salary, the post-1995 agreement clearly provided for an hourly wage.

¶20    Given that the post-1995 agreement specifically lists actual hourly wages, there is no basis for treating the contract as an annual salary contract, as the City suggests. For example, a Firefighter I with one certification would have an hourly base rate of $12.7355. Thus, the annual salary would be $26,489.84. Dividing this number by the actual hours worked on the defined schedule would equate to only $11.66 per hour, more than a dollar less per hour than the agreement stated the firefighter was to receive. It is illogical to provide an actual hourly wage but then not pay for every hour worked, thus lowering the agreed-upon hourly wage.

¶21    Although not at issue on appeal, the pre-1995 agreement did not provide an hourly break-down of wages for regular pay, special certification pay, or high certification pay,

11

but rather provided an amount for each type of pay that was then used to determine the regular monthly salary. Further, rather than starting with an hourly rate to reach an annual rate, the pre-1995 agreements provided that an hourly rate was to be derived from the annual rate, presumably for high certification pay and overtime pay purposes. Comparing the agreements further bolsters the court's conclusion that the post-1995 agreement was intended to be an hourly wage contract.

¶22    The District Court did not err in concluding that the post-1995 agreement provided for an hourly wage and that the Firefighters were to be compensated for each hour worked and were entitled to earn leave time accordingly.

> B.    *Did the District Court err in concluding Article XII, Section 2(2) of the Montana Constitution was inapplicable in this case?*

¶23    The Firefighters argue that Article XII, Section 2(2) of the Montana Constitution gives rise to a duty by employers to account for every hour worked. This part provides:

> A maximum period of 8 hours is a regular day's work in all industries and employment except agriculture and stock raising. The legislature may change this maximum period to promote the general welfare.

This constitutional provision was carried over from the 1889 Montana Constitution which provided: "A period of eight hours shall constitute a day's work in all industries, occupations, undertakings and employments, except farming and stock raising . . . ." Mont. Const., art. XVIII, § 4 (1889, amended 1935). We have previously held that this provision was not self-executing, but rather it was dependent upon legislative enforcement, pursuant to Article XVIII, Section 5, of the Montana Constitution (1889), which stated: "The legislature by appropriate legislation shall provide for the

12

enforcement of the provisions of this article." *Weston v. Montana State Hwy. Com'n*, 186 Mont. 46, 50, 606 P.2d 150, 152 (1980).

¶24    The Firefighters argue that the 1972 Constitution is not so restricted; that is, the eight-hour day guarantee is self-executing. However, the Firefighters ignore the permissive language in Article XII, Section 2(2), allowing the legislature to change the maximum period of eight hours. In fact, the legislature has enacted legislation which provides that, while eight hours is a day's work in most state and municipal government employment, § 39-4-107(1), MCA, the eight-hour day does "not apply to firefighters who are working a work period established in a collective bargaining agreement entered into between a public employer and a firefighters' organization or its exclusive representative." Section 39-4-107(2), MCA. The legislature further provided that in "municipal and county governments, the employer and employee may agree to a workday of more than 8 hours and to a 7-day, 40-hour work period: (a) through a collective bargaining agreement when a collective bargaining unit represents the employee . . . ." Section 39-4-107(4), MCA.

¶25    Here, the Firefighters are represented by a collective bargaining unit, the Local 521 International Association of Fire Fighters, which entered into a collective bargaining agreement on behalf of the Firefighters. The agreement was for a 27-day work cycle which included working 24-hour shifts and sometimes more than 40 hours per week. The Firefighters do not dispute the validity of the agreement, nor do they challenge the statutes that allow such an agreement. Thus, the eight-hour day provision of Article XII, Section 2(2) of the Montana Constitution does not apply in this case. Because it does not

13

apply, we do not need to address the Firefighters' contention that this provision gives rise to liability when an employer fails to account for every hour its employees work.

¶26 The District Court did not err in granting partial summary judgment to the Firefighters. We affirm the District Court's judgment awarding unpaid wages and leave time.

¶27 **ISSUE 2: Did the District Court err in assessing the penalty for the City's failure to pay wages?**

¶28 Section 39-3-204, MCA, provides in part:

> [E]very employer of labor in the state of Montana shall pay to each employee the wages earned by the employee in lawful money of the United States or checks on banks convertible into cash on demand at the full face value of the checks, and a person for whom labor has been performed may not withhold from any employee any wages earned or unpaid for a longer period than 10 business days after the wages are due and payable.

If an employer fails to pay wages within the specified time, a penalty must be "assessed against and paid by the employer to the employee in an amount not to exceed 110% of the wages due and unpaid." Section 39-3-206, MCA. The maximum penalty of 110 percent of the wages owed must be assessed if the following special circumstances exist:

> (a) the employer fails to provide information requested by the department and/or does not cooperate in the department's investigation of the wage claim;
> (b) there is substantial credible evidence that the employer's payroll records are falsified or intentionally misleading;
> (c) the employer has previously violated similar wage and hour statutes within three years prior to the date of filing of the wage claim; or
> (d) the employer has issued an insufficient funds paycheck.

Admin. R. M. 24.16.7556. If none of the special circumstances exist, then the penalty will be reduced to 55 percent of the wages determined to be due. Admin. R. M.

14

24.16.7566.[1]  The amount of the penalty to be imposed is not discretionary.  Pursuant to the Department of Labor and Industry administrative rules, the penalty must either be 55 percent, 15 percent, or 110 percent of the wages owed depending on the circumstances.  *Reier Broadcasting Co., Inc.*, ¶ 27.  A district court is required to take judicial notice of the administrative rules and apply the appropriate penalty.  *Reier Broadcasting Co., Inc.*, ¶¶ 28, 30; M. R. Evid. 202(d).

¶29    In this case, the District Court disregarded the minimum penalty required by the Administrative Rules and instead imposed a penalty on the City in the amount of 8.45 percent of the unpaid wages.  The District Court recognized that the Montana Legislature delegated rule-making authority to the commissioner of the Department of Labor and Industry, but summarily concluded that the commissioner overstepped that authority in fixing a minimum penalty for wage claim cases.  Section 2-4-305, MCA, addresses agencies' rulemaking authority and provides:

> (6) Whenever by the express or implied terms of any statute a state agency has authority to adopt rules to implement, interpret, make specific, or

---

[1] The parties argued and the District Court decided this issue based on Admin. R. M. 24.16.7561, which is entitled "Penalty for Minimum Wage and Overtime Claims."  This case involves neither a minimum wage claim nor an overtime claim.  The appropriate rule is Admin. R. M. 24.16.7566, entitled "Penalty for Claims Involving Other Kinds of Compensation."  Admin. R. M. 24.16.7566 provides that penalties are to be calculated as follows:
> (a) a penalty equal to 55% of the wages determined to be due to the employee will be imposed in all determinations issued by the department, but
> (b) the department will reduce the penalty to 15% of the wages determined to be due if the employer pays the wages found due in the time period specified in the determination as well a penalty equal to 15% of that amount.
> (2) If the claim involves any of the special circumstances of [Admin. R. M.] 24.16.7556, the department will impose the maximum penalty allowed by law.

15

> otherwise carry out the provisions of the statute, an adoption, amendment, or repeal of a rule is not valid or effective unless it is:
>     (a) consistent and not in conflict with the statute; and
>     (b) reasonably necessary to effectuate the purpose of the statute.

An administrative rule will be considered invalid "only upon a clear showing that the regulation adds requirements which are contrary to the statutory language or that it engrafts additional provisions not envisioned by the legislature." *Christenot v. State, Dept. of Commerce*, 272 Mont. 396, 400, 901 P.2d 545, 548 (1995) (citing *Board of Barbers v. Big Sky College*, 192 Mont. 159, 161, 626 P.2d 1269, 1270-71 (1981)). To make this determination, the court must interpret the statute. *Christenot*, 272 Mont. at 401, 901 P.2d at 548. If the legislative intent cannot be ascertained from the plain words of the statute, then the court must look to the legislative history of the statute. *Christenot*, 272 Mont. at 401, 901 P.2d at 548. Looking at the plain words of § 39-3-206, MCA, the legislature clearly intended to dissuade employers from violating wage provisions by making such a violation a misdemeanor and requiring a penalty to be assessed, in addition to requiring payment of the full amount of wages. Establishing a 15 percent or 55 percent penalty does not add another requirement. Rather, it sets a minimum within the range acceptable to the legislature. Imposition of a 55 percent penalty for failure to pay wages certainly helps effectuate the purpose of the statute. Reducing that penalty to 15 percent provides an incentive for quick payment of wages. Thus, the District Court erred when it failed to take judicial notice of Admin. R. M. 24.16.7566 and 24.16.7556 and impose a penalty of at least 55 percent, with a possible reduction to 15 percent, of the unpaid wages owed to the Firefighters.

16

¶30    The Firefighters argue that the record justifies imposing the full penalty of 110 percent, alleging that the City did not cooperate in an investigation of the wage claim, that certain records were not provided in discovery, and that the City's payroll records were falsified or intentionally misleading. In support of their argument that the City did not cooperate in the investigation of the wage claim, the Firefighters assert that the City retaliated against the Firefighters who filed the lawsuit by reassigning a majority of the original plaintiffs to Station 1, the least desirable of the City's six fire stations. Further, a supervisor stated that "if it was up to him, he would line them up against the wall and have them shot." In response, the fire chief explained at the summary judgment hearing that firefighters were transferred according to where they were needed, and that Station 1 may seem to be the least desirable station because that is where the chief is located and that the "perception is you work harder at the station where the chief works." With regard to the threat from the supervisor, the chief testified that he addressed the matter with the supervisor and instructed all personnel that they were not to discuss the lawsuit. No grievances were filed concerning either incident. The Firefighters fail to show how this conduct constitutes a failure to cooperate with an investigation of the claim.

¶31    The Firefighters also assert that records which might have been used to reconstruct hours worked were not produced in response to their request for production. They point to trial testimony of an assistant fire chief discussing what records he thought he had, or what he thought the City payroll department had, and what he thought had been thrown away as being unimportant since the Firefighters were paid based on forty hours each

17

week regardless of the hours worked.  However, the record does not provide conclusive evidence that the City withheld any requested records.

¶32    In support of the Firefighters' argument that the City kept falsified or intentionally misleading payroll records, the Firefighters point to the fact that records showing actual hours the Firefighters worked were not sent down to the payroll department, but instead were thrown away.  Further, the Firefighters assert that the City failed to keep accurate payroll records because the check register showed that each firefighter was paid for forty hours per week, regardless of whether they worked more or less than forty hours per week.  The Firefighters analogize this situation with the scenario in *Tefft* where the court awarded liquidated damages to the plaintiffs for claims brought under the FLSA.  *Tefft*, 271 Mont. at 91, 894 P.2d at 323.  The employer in *Tefft* failed to keep accurate records of the plaintiffs' actual hours worked.  *Tefft*, 271 Mont. at 86, 894 P.2d at 320.  However, that was not the basis for the liquidated damages award to the *Tefft* plaintiffs.  Rather, the State failed to demonstrate it acted in good faith or on reasonable grounds in reducing employees' wages, thus warranting an award of liquidated damages under the FLSA. *Tefft*, 271 Mont. at 93, 894 P.2d at 324.  Admin. R. M. 24.16.7556 provides a different standard—that there be substantial credible evidence that the employer's records are falsified or intentionally misleading.  Here, the records show that the Firefighters were paid for only forty hours per week.  As discussed above, the City was operating under the assumption that pursuant to the collective bargaining agreements, it was only required to pay Firefighters for forty hours per week.  This does not provide substantial evidence that the records were falsified or intentionally misleading.

18

¶33   We conclude the District Court did not err in assessing a penalty, but did err in failing to assess the required 55 percent minimum penalty, with a reduction to 15 percent of the wages determined to be due if the City pays the wages and penalty in a time period specified by the court.  We remand to the District Court to assess the appropriate penalty.

¶34   **ISSUE 3: Did the District Court err in awarding costs to the Firefighters?**

¶35   The Firefighters requested costs in the amount of $60,154.72.  The court awarded $3,972.98, limiting recovery of costs to filing and service fees, postage, photocopies, and long distance telephone calls.  The court did not award reimbursement of costs for travel expenses, witness fees, or deposition costs.  The Firefighters argue they are entitled to all costs pursuant to § 39-3-214, MCA, which provides:

> (1) Whenever it is necessary for the employee to enter or maintain a suit at law for the recovery or collection of wages due as provided for by this part, a resulting judgment must include a reasonable attorney's fee in favor of the successful party, to be taxed as part of the costs in the case.
> (2) Any judgment for the plaintiff in a proceeding pursuant to this part must include all costs reasonably incurred in connection with the proceeding, including attorneys' fees.

¶36   The District Court concluded, and the City agrees, that costs should still be limited by § 25-10-201, MCA, which provides:

> A party to whom costs are awarded in an action is entitled to include in his bill of costs his necessary disbursements, as follows:
> (1) the legal fees of witnesses, including mileage, or referees and other officers;
> (2) the expenses of taking depositions;
> (3) the legal fees for publication when publication is directed;
> (4) the legal fees paid for filing and recording papers and certified copies thereof necessarily used in the action or on the trial;
> (5) the legal fees paid stenographers for per diem or for copies;
> (6) the reasonable expenses of printing papers for a hearing when required by a rule of court;

19

(7) the reasonable expenses of making transcript for the supreme court;
(8) the reasonable expenses for making a map or maps if required and necessary to be used on trial or hearing; and
(9) such other reasonable and necessary expenses as are taxable according to the course and practice of the court or by express provision of law.

The District Court reasoned that *Delaware v. K-Decorators, Inc.*, 1999 MT 13, ¶ 70, 293 Mont. 97, ¶ 70, 973 P.2d 818, ¶ 70, "seems to guide the Court toward limiting costs to those in § 25-10-201, MCA."

¶37 A trial court has broad discretion in taxing costs, but not every litigation expense is recoverable. *Springer v. Becker*, 284 Mont. 267, 275, 949 P.2d 641, 645 (1997) (citations omitted). Section 25-10-201, MCA, is an exclusive list of costs which may be taxed to an opponent unless the case is taken out of its operation by a more specialized statute, by stipulation of the parties, or by rule of court. *Springer*, 284 Mont. at 275, 949 P.2d at 645 (citations omitted); *Roseneau Foods, Inc. v. Coleman*, 140 Mont. 572, 580, 374 P.2d 87, 91 (1962). This is a wage claim case specifically covered by a more specialized statute, § 39-3-214, MCA, which requires an award of costs which "must include *all costs* reasonably incurred in connection with the proceeding." This Court has previously determined that "the legislature's intent in passing [§ 39-3-214, MCA,] was to provide an employee who wins a judgment for wages due against an employer a vehicle by which to receive attorneys fees and thus be made whole." *Glaspey v. Workman* (*Glaspey I*), 230 Mont. 307, 309, 749 P.2d 1083, 1084 (1988). The same purpose applies in awarding costs—passing the burden to the employer so that the "employee's net award is preserved intact and is not eroded by the cost of litigation." *Stimac v. State*, 248 Mont. 412, 415, 812 P.2d 1246, 1248 (1991). The broad application of § 39-3-214, MCA,

20

allowing recovery of all costs, including attorney fees, incurred in a suit to recover wages is best illustrated in *Glaspey I*, 230 Mont. at 308-09, 749 P.2d at 1084, where the Court awarded attorney fees when an employee was forced to file suit to pierce the corporate veil of his prior employer in order to collect wages awarded in a prior successful wage claim action.

¶38    We disagree that *Delaware* provides authority requiring the court to limit costs in a wage claim case.  The issue in *Delaware* was whether the claimant timely filed his memorandum of costs allowed by § 39-3-214, MCA.  *Delaware*, ¶ 65.  In that case, we concluded that § 25-10-501, MCA, controlled when a party was required to file his or her memorandum of costs.  *Delaware*, ¶ 71.  Unlike § 25-10-201, MCA, delineating allowable costs in general, § 25-10-501, MCA, setting a deadline of five days for filing a memorandum of costs, does not have a more specific counterpart in the wage claim statutes.

¶39    We conclude that the District Court erred in awarding only $3,972.98 in costs. We reverse and remand for an entry of judgment awarding the Firefighters all reasonable costs incurred in this litigation pursuant to § 39-3-214, MCA.

¶40    **ISSUE 4: Did the District Court abuse its discretion in awarding attorney fees to the Firefighters?**

¶41    Contrary to the general rule, attorney fees in wage claim actions are taxed as part of the prevailing party's costs to be awarded.  Section 39-3-214, MCA; *Delaware*, ¶ 70. The purpose of awarding attorney fees to an employee who obtains a judgment in a wage claim is to make the employee whole.  *Glaspey I*, 230 Mont. at 309, 749 P.2d at 1084;

21

*Stimac*, 248 Mont. at 415, 812 P.2d at 1248. The amount of attorney fees to be awarded is within the discretion of the District Court, and unless an abuse of discretion is shown, an award based on competent evidence will not be disturbed on appeal. *Glaspey v. Workman* (*Glaspey II*), 234 Mont. 374, 377, 763 P.2d 666, 668 (1988). The court must hold an evidentiary hearing to determine the reasonableness of the requested fees and elicit evidence based on oral testimony, cross-examination, and the introduction of exhibits, which will be competent evidence upon which attorney fees can be based. *Glaspey II*, 234 Mont. at 377-78, 763 P.2d at 668. In considering whether to award the full amount of a contingent fee agreement as a reasonable attorney fee pursuant to § 39-3-214, MCA, a district court must consider the following factors:

1. The novelty and difficulty of the legal and factual issues involved;
2. The time and labor required to perform the legal service properly;
3. The character and importance of the litigation;
4. The result secured by the attorney;
5. The experience, skill, and reputation of the attorney;
6. The fees customarily charged for similar legal services at the time and place where the services were rendered;
7. The ability of the client to pay for the legal services rendered; and
8. The risk of no recovery.

*Stimac*, 248 Mont. at 417, 812 P.2d at 1249.

¶42 In this case, sixty-four of the Firefighters signed retainer agreements providing for a one-third contingency fee for their attorneys, with the remaining Firefighters to bear a portion of the litigation costs according to the common fund doctrine. The court held a hearing and heard testimony from one of the Firefighters regarding the contingency fee agreement he had signed and his inability to pay attorney fees when he initiated the case. The court also heard argument from the attorneys on both sides with regard to the *Stimac*

22

factors. The District Court declined to grant the one-third contingency fee. In issuing its judgment, the court considered the *Stimac* factors and applied them as follows:

1. The novelty and difficulty of the legal and factual issues was moderate; this was an unpaid wages and contract case.
2. The time and labor required from the attorneys was moderate; even though the case is six years old there are only 158 documents in the court file; discovery was extensive and difficult; the in-depth and time consuming analysis was mostly an accounting project.
3. The character and importance of the litigation exceeds that of most cases as it was important not only to the litigants but also to others similarly situated and to the public in general.
4. The results secured by plaintiffs' attorneys were excellent.
5. The experience, skill and reputation of plaintiffs' attorneys, and defendant's attorneys, are seldom surpassed by others in any court; all were very experienced, highly skilled, and very reputable.
6. & 7. The contingency fee agreement was standard and customary for plaintiffs who were not able to pay an hourly fee either individually or as a group.
8. The risk of no recovery was very real to plaintiffs' attorneys, as it is in all contingency cases.

¶43 The court expounded on some of these factors and considered additional factors. It noted that only one-half of the Firefighters actually agreed to and signed a one-third contingency fee, leaving the others to pay according to the common fund doctrine. It placed great emphasis on the fact that, although the case had gone on for nearly six years, the court file contained fewer documents than might be expected. Further, although the Firefighters' attorneys took this case on as a contingency fee case, they knew or should have known that if successful, they would be awarded attorney fees as part of their costs. Thus, the court concluded, the attorneys should have kept track of their time. The court relied on its own experience and knowledge of the case to conclude that, despite the significant amount of time, effort and skill on the part of the Firefighters' counsel, fees

23

based on time would not have amounted to $1,000,000. Noting that the court had been involved with the case from the beginning, heard the evidence, weighed the arguments, and reviewed case law, the court awarded $625,000 in attorney fees. The court stated that this "amount should surely be two to three times the actual time, skills, experience, effort, and all costs (even those not awarded) plaintiffs have invested in this case." Finally, the court reasoned that this would reasonably, adequately and appropriately reward the Firefighters for the risk of no recovery at all.

¶44 The Firefighters argue that the court abused its discretion when it did not award the full one-third contingency fee, stating that six of the eight factors strongly supported a contingent fee. They contend the court put great weight on the fact that the case went on for six years, and allege that the City was principally responsible for the delay. However, as noted, the court downplayed the significance of the lengthy litigation in that there were few documents in the court file given that length of time. Furthermore, the Firefighters did not provide any evidence showing how the City was responsible for the delay.

¶45 Based on the evidence provided and the court's familiarity with the case, the court analyzed each of the *Stimac* factors and exercised its discretion in determining an amount of reasonable attorney fees. We conclude the court's decision is supported by the record. Since the court did not abuse its discretion in awarding fees, we will not disturb the court's ruling. *Glaspey II*, 234 Mont. at 377, 763 P.2d at 668.

## CONCLUSION

¶46 We conclude the District Court did not err in granting partial summary judgment in favor of the Firefighters and we affirm the award of unpaid wages and leave time in

24

the amount of $3,075,590.30. We conclude the District Court did not abuse its discretion when it awarded $625,000 in attorney fees. Finally, we conclude the District Court erred when it failed to assess the minimum penalty pursuant to administrative rule, and when it failed to award all reasonable costs incurred by the Firefighters. We reverse and remand for further proceedings consistent with this Opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS

Justice Jim Rice, concurring in part and dissenting in part.

¶47 I concur with the Court's resolution of Issues 1, 3 and 4, but dissent from the resolution of Issue 2.

¶48 I believe that all of the administrative rules which set penalty floors are defective for the same reason—they are in conflict with the statute. Although the Court relies on *Reier*'s application of these provisions, the *Reier* Court was careful to note that the employer there "[did] not dispute, in any of its briefing, the validity . . . of the administrative rules . . . ." *Reier*, ¶ 30. Here, the City of Billings does so.

¶49 Section 39-3-206, MCA, provides, in pertinent part, that:

(1) An employer who fails to pay an employee as provided in this part or who violates any other provision of this part is guilty of a misdemeanor. A penalty

25

> must also be assessed against and paid by the employer to the employee in an amount *not to exceed 110%* of the wages due and unpaid. [Emphasis added.]

Clearly, the statute requires a penalty, but does not limit the penalty to be imposed to a few mandatory floors. Instead, it sets a wide range between near zero up to 110 percent. Neither does the statute's rulemaking authority delegate to the Department the duty of designating the penalty level(s). Rather, the broad penalty range is to be applied discretionarily in each wage collection proceeding. The Department's penalty floors are mandatory ("[t]he maximum penalty is mandatory under the above circumstances . . . ." Admin. R. M. 24.16.7556(3); "a penalty equal to 55% . . . will be imposed . . . ." Admin. R. M. 24.16.7566(1)(a); "the department will impose the maximum penalty allowed by law." Admin. R. M. 24.16.7566(2)) and arbitrary, eliminating the exercise of any discretion by the court or decisionmaker, as well as the freedom to weigh the significance of the violation under the circumstances of each case.

¶50 The Court concludes in ¶ 29 that "[e]stablishing a 15 percent or 55 percent penalty does not add another requirement. Rather, it sets a minimum within the range acceptable to the legislature." The flaw in this reasoning can readily be seen—it would likewise allow the Department to require a 110 percent penalty in all cases, because such a rule would be within the range "acceptable to the legislature." To the contrary, this Court has held that regulations are "out of harmony" with statute if "they engraft additional, noncontradictory requirements on the statute which were not envisioned by the legislature." *Board of Barbers, Etc. v. Big Sky College, Etc.*, 192 Mont. 159, 161, 626 P.2d 1269, 1270 (1981) (citation omitted). Thus, a regulation may be within statutory

parameters, yet invalid as imposing additional, unforeseen restrictions. In *Board of Barbers*, the relevant statute stated as follows:

> "On completion of 1 year of apprenticeship under the immediate personal supervision of a licensed barber, an apprentice must apply to the department to take the examination for a barber's certificate of registration."

*Board of Barbers*, 192 Mont. at 160, 626 P.2d at 1270 (quoting § 37-30-305, MCA).

Pursuant thereto, the Board of Barbers adopted this rule:

> Every apprentice must serve one normal work year, or its equivalent at the discretion of the board, as an apprentice before he can take the barber examination.

*Board of Barbers*, 192 Mont. at 160, 626 P.2d at 1270. In turn, the Board defined "normal work year" as one served in a commercial barber shop only. *Board of Barbers*, 192 Mont. at 162, 626 P.2d at 1271. The Court struck down the rule, concluding:

> [T]he statute simply requires a year's apprenticeship served "under the immediate personal supervision of a licensed barber." Thus the Board's rule engrafts an additional requirement on apprenticeship not contained in the statute. In our view, this additional requirement that apprenticeship be served in a commercial barbershop does not satisfy the test of "reasonable necessity to effectuate the purpose of the statute," section 2-4-305(5), MCA, viz. requiring a period of training prior to qualifying for examination and licensing as a barber. *It engrafts additional, noncontradictory requirements on apprenticeship prohibited by* Bell *and* Michels. We hold the rule as interpreted by the Board invalid.

*Board of Barbers*, 192 Mont. at 162, 626 P.2d at 1271 (emphasis added).

¶51    By requiring that all employers violating the wage statute be assessed one of three arbitrary penalties, the Department has both added requirements and narrowed the statute's application, thus "exceed[ing] the authority provided by statute . . . ." *Taylor v. Taylor*, 272 Mont. 30, 36, 899 P.2d 523, 526 (1995). The penalty rules force the

Department and the courts to hammer inevitably "square peg" fact patterns into one of three "round hole" penalty levels, despite legislative authority to the contrary. Likewise, the rule violates § 2-4-305(6)(b), MCA, because the arbitrary penalties cannot be said to be "reasonably necessary to effectuate the purpose of the statute." If anything, the rules constrict the statute's intended effect and make it more difficult to effectuate the statute.

¶52 I agree with the District Court's conclusion that, to the extent the Commissioner or the Department has fixed penalties, "they have exceeded their authority. . . . Only the legislature can set the minimum penalty; the legislature . . . has not delegated this authority." While the Department may well be able to issue guidelines for penalty assessments under the statute, it cannot set arbitrary penalty levels.

¶53 I would affirm on Issue 2.


/S/ JIM RICE



Chief Justice Karla M. Gray and Justice John Warner join the concurring and dissenting opinion of Justice Rice.


/S/ KARLA M. GRAY
/S/ JOHN WARNER


28