JUSTICE RICE
delivered the Opinion of the Court.
¶1 Appellant City of Billings (City) appeals the orders and judgment of the Thirteenth Judicial District Court, Yellowstone County, holding the City incorrectly paid “longevity” wage benefits under successively negotiated Collective Bargaining Agreements (CBAs), and awarding damages to Appellees Ernie Watters, et al., and all others similarly situated (Officers). The City raises six issues, but we reverse and remand for further proceedings on the issue stated below, and do not address the additional issues:
Did the District Court err by holding the CBAs were unambiguous and excluding extrinsic evidence concerning interpretation of those agreements?
FACTUAL AND PROCEDURAL BACKGROUND
¶2 Officers are current and retired police officers, and members of the Montana Public Employees Association-Billings Police (Union). The Union, on behalf of the Officers, collectively bargains with the City to adopt an agreement governing the terms of the Officers’ employment. The central dispute in this case is the correct interpretation of the longevity pay provisions in the 2000-2003, 2003-2006, and 2006-2009 CBAs entered by the City and the Union. Those provisions stated, in full:
2000-2003 CBA:
Longevity shall be added to each officer’s hourly rate based upon the following formula:
.45 x .01 x the hourly rate of an officer at the beginning of year 1 x years of service.
2003-2006 CBA:
Beginning July 1, 2003, longevity shall be added to each officer’s hourly rate based upon the following formula:
.45 x .01 x the hourly rate of an officer from year 1 to 15 years of service.
.50 x .01 x the hourly rate of an officer after year 15.
2006-2009 CBA:
(Same language as in the 2003-2006 CBA, but with nearly appropriately corresponding dates.)
¶3 The City paid longevity pay to the Officers in accordance with its understanding of the contractual formula provided in the 2000-2003 CBA, including the language “x [or, times] the hourly rate of an officer at the beginning of year 1 x [times] years of service.” The internal wording, “the hourly rate of an officer at the beginning of year 1,” *378 placed between two multiplication signs, was read by the City as a singular phrase that set the base wage to be used in the calculation, that being an officer’s hourly wage rate “at the beginning of year 1.” Further, the City understood the phrase coming after the second multiplication sign, “years of service,” also provided in the 2000-2003 CBA, to mean years that an officer had actually served or completed. For example, the City would calculate longevity pay for an officer beginning his or her sixth year of employment based upon five years of completed service. Even though the phrase “at the beginning of year 1,” and the multiplier based on “years of service,” were not included in the 2003-2006 and 2006-2009 versions of the CBA, the City continued to calculate longevity pay pursuant to these terms, believing it had agreed with the Union to do so, and thus paid this longevity benefit over the entire period in dispute. The Union agreed with this calculation and is not a party in this proceeding.
¶4 The Officers filed suit in 2009, claiming the City had incorrectly calculated longevity pay under the CBAs. Specifically, the Officers claimed that the CBA required the City to pay “accumulated longevity enhancements.” The Officers claimed that, instead of basing longevity on an officer’s hourly wage rate at the beginning of year 1, the City was required to cumulatively “add longevity increases to each police officer’s hourly rate” in order to calculate the “full longevity increase owed.” The Officers claimed other damages associated with their longevity claim, including retirement contributions. The Officers asserted that the longevity provisions of the CBAs were “complete and unambiguous, and none of these provisions requires the introduction of extraneous evidence in order to interpret them.” Officers requested, and the District Court certified, the matter as a class action.
¶5 The City answered, asserting it had initially paid and thereafter continued to pay the longevity benefit as negotiated with the Union under the CBA. Noting the changes in language in the successive CBAs, the City specifically denied Officers’ assertion that the longevity provisions were unambiguous, and affirmatively asserted “that the introduction of extrinsic evidence is necessary to interpret them.” Further, in a counterclaim, the City noted that later versions of the CBA had eliminated the multiplier for an officer’s years of service and, pursuant to the Officers’ assertion that the CBAs were unambiguous and amenable to a plain reading, the City had overpaid longevity to the Officers and, under such a reading, would be entitled to a refund. The District Court dismissed the City’s counterclaims as a matter of law, reasoning that they were dependent upon extrinsic evidence that was inappropriate to consider.
*379 ¶6 Officers moved for summary judgment on their claims and, in response to Officers’ accumulation theory, the City cited Raw v. City of Helena, 139 Mont. 343, 347, 363 P.2d 720, 722 (1961), for the proposition that “it is to the base salary and not to the base salary plus longevity that longevity is added.” However, the District Court did not expressly address the Officers’ accumulation theory, but rather focused on whether the CBAs were subject to a plain reading, reasoning that “[t]he Court finds that the language, ‘longevity shall be added to each officer’s hourly rate ...’ is clear, unambiguous, and easily understandable. It is not ambiguous nor reasonably subject to two different interpretations.” (Emphasis original.) Rejecting the City’s argument that extrinsic evidence was necessary to properly understand the longevity provisions of the contracts, the District Court ruled that “[tjhere can be no reasonable argument that the [CBAs] and the attachments thereto plainly state and mean anything other than that longevity shall be added to each officer’s hourly rate. ... There is no need for extraneous or parol evidence.” (Emphasis in original.)
¶7 Then, the District Court, in a few sentences at the end of its order, offered determinative examples about how longevity was to be calculated under the CBAs, and in so doing incorporated calculation issues that had not been pleaded or briefed by the parties, stating as follows:
As an example, in 1994, an officer who is in his 11th year of service would calculate his longevity addition according to the formula:
.45 x .01 x $10.8898 x 11 = .539
For the same officer, who in 1995 would be in his 12th year of service, the longevity addition would be:
.45 x .01 x $11.2709 x 12 = .609
Although offering equations, the District Court did not reference any language in the CBAs or discuss any governing legal principles to explain its determination of the components therein, including its use of a years-of-service multiplier for periods when the CBAs included no multiplier, or, critically, its implied rejection of the City’s long use of completed years of service in that multiplier. It did not analyze the specific language differences in the successive versions of the CBAs or the City’s use of the contractual phrase “the hourly rate of an officer at the beginning of year 1” to calculate the base wage in the formula. The District Court simply reasoned that the CBAs “are complete, unambiguous, and easily understandable on their faces and require no extraneous evidence for interpretation” and provided example equations, with no source authority for the particular components and *380 calculations employed in the example equations.[1]
¶8 Following retirement of the presiding judge, Hon. Neis Swandal, the District Court’s partial summary judgment order became known in the litigation as the “Swandal Formula,” even though, technically, it provided no actual “formula” based upon contract language, but only example equations. Nonetheless, the order significantly altered the litigation going forward. The Officers thereafter embraced the equations the District Court had adopted sua sponte, rather than the accumulation theory drawn from the CBAs that they had originally stated in their complaint. The Officers’ expert accountant testified:
Q. And it’s correct, is it not, that you did not use in your computations the longevity formulas that appear in the [CBAs].
A. I believe I used the judge’s—
Q. Right.
A. —requirement.
Q. Right. I just wanted to make that clear. You didn’t use the longevity formula in the three contracts, you used the Judge’s order?
A. That’s correct.[2]
¶9 The District Court’s sua sponte incorporation of a non-completed year of service within the years-of-service multiplier took the City by surprise, as that specific issue had not been previously raised in the litigation or briefed, and was contrary to the City’s longstanding practice in wage agreement administration. As the City’s Human Resource Director testified, when asked about the Swandal Formula:
Of course, you know I disagree .... And you’re going to tell me, well, Swandal has already heard that, but how do you have 1 year of experience at Day 1? I’m very passionate about that, because I don’t understand that. We have 3 other groups that are also paid longevity. We have police—or sorry—teamsters, fire and non-bargaining, and all of those 3 groups also start after completed years of service. You have to complete a year before you get *381 longevity ....
This understanding of longevity was echoed in the testimony of the Officers’ Class Representative:
Q. As far as you know, when the police union and the city in their longevity contracts talked about years of service, was the understanding that years of service was a count of completed years? That is, you sign on, and at the end of 12 months, you’ve got a year.
A. I believe so, yes, sir. That would be longevity. [(Emphasis added.)]
¶10 Following a bench trial, the District Court issued findings of fact, conclusions of law and an order.[3] Ruling that “[t]he plain language of the CBAs governs the outcome of this case,” the District Court again refused to consider extrinsic evidence offered by the City about the meaning of the longevity formulas in the CBAs. The court stated it was making “one exception” to this ruling, for purposes of considering extrinsic evidence about the years-of-service multiplier, reasoning the omission of the multiplier in the 2003-2006 and 2006-2009 CBAs was merely a “scrivener’s error.” Noting that Judge Swandal had previously “interpreted the formula such that an officer in his first year of service would have longevity calculated to include one year of service,” the District Court adopted the same interpretation, concluding that “longevity must be calculated in accordance with the plain language of the CBAs, ‘at the beginning of year one.’ ” Although the term, “at the beginning of year 1,” was stated only in the 2000-2003 CBA, the District Court applied the term to the successive CBAs based on consideration of extrinsic evidence.
¶11 However, while stating it was making this “one exception” to the exclusion of extrinsic evidence, the District Court nonetheless selectively considered and relied upon other extrinsic evidence that was critical to its findings of fact and conclusions of law. First, the District Court found that “[hjistorically, the City calculated longevity beginning on day one of year one.” To support this factual finding, the District Court cited to extrinsic evidence—a purported internal City memorandum.[4]
*382 ¶12 Secondly, the District Court found that “the City does write plain language agreements calling for longevity increases only after completion of one year of service,” citing to extrinsic evidence of the later 2009-2012 CBA negotiated between the Union and the City, which provided for longevity pay based upon “years of completed service.” (Emphasis added.) Citing these two findings of fact, both clearly premised upon extrinsic evidence of the City’s practices outside the subject CBAs, the District Court entered the following conclusion of law:
The fact that the City historically paid longevity commencing in an officer’s first year of service, and the fact that the City changed its longevity language, after this case was filed[,] to state that longevity was to be calculated based upon completed years of service, both cause the Court to question the credibility of the City’s position to the contrary.
¶13 The District Court entered a final judgment requiring the City to pay the Officers $932,960.90, imposing a 110% penalty of $1,026,256.99, and awarding attorneys’ fees of $653,072.63 and costs of $125,854.60, for a total of $2,738,145.12. The City appeals.
STANDARD OF REVIEW
¶14 We review questions of law, including the interpretation of provisions in a collective bargaining agreement, for correctness. Kuhr v. City of Billings, 2007 MT 201, ¶¶ 13, 18, 338 Mont. 402, 168 P.3d 615 (citing Reier Broad. Co. v. Reier, 2000 MT 120, ¶ 20, 299 Mont. 463, 1 P.3d 940; Hughes v. Blankenship, 266 Mont. 150, 154, 879 P.2d 685, 687 (1994)).
DISCUSSION
¶15 Did the District Court err by holding that the CBAs were unambiguous and excluding extrinsic evidence concerning interpretation of those agreements ?
¶16 We are here concerned with whether the law was properly applied to the interpretation of a collective bargaining agreement. “The interpretation of provisions in a collective bargaining agreement is a *383 question oflaw.” Kuhr, ¶ 18 (citing Hughes, 266 Mont. at 154, 879 P.2d at 687); accord Wurl v. Polson Sch. Dist. No. 23, 2006 MT 8, ¶ 16, 330 Mont. 282, 127 P.3d 436. If the “contract provision is clear and unambiguous,” the “court must apply the language as written.” Kuhr, ¶ 18 (citing Wurl, ¶ 16). However, “[i]f a contract term is ambiguous, interpretation of the term requires resolving a question of fact regarding the intent of the parties to the contract.” Kuhr, ¶ 18 (citing Wurl, ¶ 17); accord In re Marriage of Mease, 2004 MT 59, ¶ 30, 320 Mont. 229, 92 P.3d 1148 (holding a contract ambiguity requires “a determination of a question of fact: the real intention of the parties at the time of contracting”). Whether ambiguity exists is a “question of law for the court’s determination.” Kuhr, ¶ 18 (citing Wurl, ¶ 17). “An ambiguity exists where the language of the contract, as a whole, could reasonably be subject to two different meanings.” Kuhr, ¶ 18 (citing Wurl, ¶ 17); accord State v. Asbeck, 2003 MT 337, ¶ 18, 318 Mont. 431, 80 P.3d 1272. If the court determines that an ambiguity is present in the instrument, then “extrinsic evidence may be introduced at trial to allow the trier of fact to determine the intent of the parties in entering into the contract.” Mary J. Baker Revocable Trust v. Cenex Harvest States Coop., Inc., 2007 MT 159, ¶ 55, 338 Mont. 41, 164 P.3d 851 [hereinafter Baker Revocable Trust].
¶17 The City and the Officers both acknowledge there are language inconsistencies within the subject CBAs, but disagree about the significance of these problems, and whether they rise to a contract ambiguity as a matter of law. Additionally, the parties read different meanings into the existent contract language. The Officers read the term “at the beginning of year 1” in the 2000-2003 CBA to mean that longevity is to be paid from the beginning of the first year of employment, and believe that phrases stated on pay matrices attached to the CBAs support this interpretation. They further argue that the term is meant to modify the years-of-service multiplier. In contrast, the City believes that the term must be read as part of the complete phrase set between two multiplication signs, “the hourly rate of an officer at the beginning of year 1,” to mean that the rate of longevity pay is calculated based upon what Officers earned at the beginning of the first year of employment. Both of these interpretations of the contract language are reasonable readings, thus creating a legal ambiguity. Kuhr, ¶ 18. The City argues that its interpretation, requiring an officer to complete a year of service, is supported by common meaning of the word “longevity,” by common law rules of grammatical construction that generally require a term (“at the beginning of year 1”) to modify the last antecedent (“the hourly rate of an officer”), and by the long *384 history and practice of the parties under the CBAs. Of course, consideration of the parties’ history and practice would first require a legal determination of contract ambiguity, followed by the admission of extrinsic evidence at trial. Such offers of proof were made by the City, but were denied by the District Court.
¶18 Adding to the interpretational difficulty is the fact that not one, but three, CBAs are at issue, providing different language. The contested term mentioned above, “at the beginning of year 1,” is found only in the 2000-2003 CBA. Not only was its meaning contested, but the propriety of its continued application to the subsequent CBAs was another legal question to be determined in the proceeding. The District Court, both in the Swandal Formula and after trial, resolved these questions in the Officers’ favor. The problem is that the Swandal Formula, premised upon no pleading or briefing, provided no explanation about how it arrived at these determinations, but simply incorporated them into equations; then, the District Court reached the same conclusions after trial by doing what it explicitly said it would not do—relying on extrinsic evidence of the City’s practices outside the subject CBAs. As noted above, the District Court used extrinsic evidence to resolve the most critical longevity calculation issue: the rejection of the City’s demonstrably long practice of calculating years of service based upon completed years of service.
¶19 The District Court’s legal analysis was inherently contradictory and legally incorrect. Although concluding as a matter of law that the subject CBAs contained no ambiguity and could be resolved on their plain language, the District Court nonetheless considered and relied upon extrinsic evidence to interpret the CBAs. “If the court determines that the instrument contains no ambiguity, then the extrinsic evidence may not be considered further.” Baker Revocable Trust, ¶ 55. Only when “the court determines that an ambiguity is present in the instrument” may extrinsic evidence be introduced at trial to determine the intent of the parties. Baker Revocable Trust, ¶ 55.
¶20 At a minimum, some ambiguity in the CBAs was acknowledged by the parties and by the District Court by applying the years-of-service multiplier to all of the CBAs, even though it was contained only in the 2000-2003 CBA. While the District Court described this as a “scrivener’s error,” it nonetheless here required extrinsic evidence to interpret the CBAs correctly. The District Court received extrinsic evidence on this point, but minimized its actions as the “one exception” it was making to the exclusion of such evidence. However, despite this statement, the District Court cited and relied *385 upon other extrinsic evidence in its findings of fact and conclusions of law. It was an error of law to rely on extrinsic evidence in favor of the Officers, while imposing a blanket exclusion upon the extrinsic evidence offered by the City. Baker Revocable Trust, ¶ 55.
¶21 We conclude from a review of the record that the District Court erred by concluding as a matter of law that the longevity provisions of the subject CBAs were unambiguous. The differing language of the successive CBAs are reasonably subject to more than one interpretation, and the blanket exclusion of all extrinsic evidence offered by the City—while selectively relying on other extrinsic evidence—was likewise erroneous. We reverse and remand for further proceedings consistent with this conclusion, and for consideration at trial of extrinsic evidence about the parties’ intent, subject to application of the Rules of Evidence.
¶22 Reversed and remanded for further proceedings.
JUSTICES McKINNON, BAKER, SANDEFUR and SHEA concur.

 It is not clear why the District Court used the years 1994 and 1995 in its equations.

 Although not explained by the District Court in its order, the Swandal Formula may have impliedly incorporated portions of the Officers’ original accumulation theory within its example equations. The City’s protestations on appeal notwithstanding, the Officers cannot be faulted for embracing the Swandal Formula’s more favorable contract interpretation and abandoning their original theory. Nonetheless, this development helps to illustrate that the CBAs were subject to multiple interpretations.

 Hon. Brenda Gilbert assumed the case upon Judge Neis Swandal’s retirement, and conducted the trial.

 In addition to challenging the District Court’s reliance on this extrinsic evidence, the City also challenges the factual finding as clearly erroneous for lacking substantial evidence, because the purported memorandum on which the finding of fact is based does *382 not actually exist, and, in any event, the finding is directly contrary to the clear record evidence that the City has continuously paid longevity only after an officer completes one year of service. The Officers do not answer the City’s clearly erroneous argument. For purposes of our decision, we address the District Court’s reliance on extrinsic evidence, but do not address whether the finding of fact is also clearly erroneous.